# 15-3321

## UNITED STATES COURT OF APPEALS
for the
## SECOND CIRCUIT

—————————————————

POUGHKEEPSIE SUPERMARKET CORP., Individually and on behalf of all others similarly situated doing business as, d/b/a MARKET FRESH,

Plaintiff-Appellant

-against-

## DUTCHESS COUNTY, NEW YORK,

Defendant-Appellee.

—————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

—————————————————

## BRIEF AND APPENDIX FOR APPELLANT

—————————————————

ROBERT N. ISSEKS, ESQ.
6 North Street
Middletown, New York 10940
(845) 344-4322

KEVIN D. BLOOM, ESQ.
530 Blooming Grove Turnpike
P.O. Box 4323
New Windsor, New York 12553
(845) 561-6920

ON THE BRIEF:
ROBERT N. ISSEKS, ESQ.

Attorneys for Plaintiff-Appellant

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
----------------------------------------------------------------------X
POUGHKEEPSIE SUPERMARKET CORP.,
Individually and on behalf of all others similarly
situated doing business as, d/b/a MARKET FRESH,

Plaintiff-Appellant,

-against-                                                    15-3321

DUTCHESS COUNTY, NEW YORK,

Defendant-Appellee.
----------------------------------------------------------------------X

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………… iii

JURISDICTIONAL STATEMENT …………………………………………… 1

QUESTIONS PRESENTED …………………………………………………... 1

THE NATURE OF PLAINTIFF'S CLAIMS …………………………………… 2

STANDARDS OF REVIEW ………………………………………………….. 8

    Rule 12(b)(6) Generally …………………………………………… 8

    The Two Levels Scrutiny for First Amendment Commercial Speech …….… 9

ARGUMENT …………………………………………………………………… 11

    Introduction ………………………………………………………… 11

    Point 1
    The District Court misapplied *Zauderer* ………………………… 14

*Price Marking serves no Legitimate Governmental Purpose* ……..  17

*Two Illustrative Cases* ………………………………………..  21

Point 2
Plaintiff States a Claim under *Central Hudson* …………………..  26

CONCLUSION ……………………………………………………  33

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases:**</u>

*Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18 (D.C. Cir. 2014)
(Concurring Opinion) (Kavanaugh, J.) ……………………………….....  15, 16

*Ameritech Corp. v. United States*, 867 F. Supp. 721 (N.D. Ill. 1994) …………...  20

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ………………………………………...  8

*Beeman v. Anthem Prescription Mgmt., Inc.*, 2007 WL 8433882
(C.D. Cal. 2007) ………………………………………………………………  15

*Brotherhood of Locomotive Firemen & Enginemen v.
Chicago, R.I. & P.R.R.,* 393 U.S. 129 (1968) …………………………………  20

*Burlington N. R. Co. v. Dep't of Pub. Serv. Regulation*,
763 F.2d 1106 (9th Cir. 1985) …………………………………………………..  20

*Buss. for a Better N.Y. v. Angello,* 341 Fed.Appx. 701 (2d Cir. 2009) ………..·  13

*Chastleton Corp. v. Sinclair,* 264 U.S. 543 (1924) …...…………………………  13

*Central Hudson Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of
New York*, 447 U.S. 557 (1980) ……………   2, 9, 11, 14, 16, 22, 26, 28, 29, 30, 32

*Connecticut Bar Ass'n v. United States*, 620 F.3d 81 (2d Cir. 2010) ..  15, 17, 18, 30

*CTIA--The Wireless Ass'n v. City & Cty. of San Francisco, Cal.*,
827 F. Supp. 2d 1054 (N.D. Cal. 2011) *aff'd sub nom. CTIA-Wireless
Ass'n v. City & Cty. of San Francisco, Cal.*, 494 F. App'x 752 (9th Cir. 2012) …  12

*Dwyer v. Cappell*, 762 F.3d 275 (3d Cir. 2014) …………………………  21, 22, 23

*Dwyer v. Cappell*, 951 F.Supp.2d 670 (D.N.J. 2013) …………………………...  22

*Edenfield v. Fane,* 507 U.S. 761 (1993) …………………………………………  19

*Edwards v. D.C.*, 755 F.3d 996 (D.C. Cir. 2014) ……………………...…….. 25, 26

*G. D. Searle & Co. v. Cohn*, 455 U.S. 404 (1982) ………………………… 13

*Harris v. Quinn*, 134 S. Ct. 2618 (2014) ………………………………...… 11

*Hayes v. New York Attorney Grievance Comm. of the Eight Judicial Dist.*, 672 F.3d 158 (2d Cir. 2012) …………………………………………. 29, 30, 32

*Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136 (1994) ………………………………………..… 19, 20

*International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67 (2d Cir. 1996) .. 30, 31,32

*Jones v. Schneiderman*, 888 F. Supp. 2d 421 (S.D.N.Y. 2012) ………………… 13

*Krys v. Pigott,* 749 F.3d 117 (2d Cir. 2014) ……………………………………… 8

*Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395 (2d Cir. 2014)……….. 8

*Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229 (2010) ….. 17, 22

*Milnot Co. v. Richardson*, 350 F. Supp. 221 (N.D. Ill. 1972) ……………….... 5, 20

*Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456 (1981) ………………… 13

*Nashville, C. & St. L. Ry. v. Walters*, 294 U.S. 405 (1935) ………………… 13, 14

*Nat'l Elec. Mfrs. Ass'n v. Sorrell,* 272 F.3d 104 (2d Cir. 2001) …………...… 10, 18

*New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114 (2d Cir. 2009) ………………………………………….. 14, 17, 18

*Pac. Frontier v Pleasant Grove City*, 414 F3d 1221 (10th Cir. 2005) …………... 28

*Pharm. Care Mgmt. Ass'n v. Rowe,* 429 F.3d 294 (1st Cir. 2005) ……………… 15

*Pirro v. Nat'l Grid*, 590 F. App'x 19 (2d Cir. 2014) ……………………...… 8

iv

*Poughkeepsie Supermarket Corp. v. Cty. of Dutchess, N.Y.*,
No. 14-CV-1702 CS, 2015 WL 6128800 (S.D.N.Y. Oct. 15, 2015) …………....... 1

*Rumsfield v. Forum for Acad. & Institutional Rights, Inc.*,
547 U.S. 47 (2006) …………………………………………………………….... 11

*Safelite Grp., Inc. v. Jepsen*, 764 F.3d 258 (2d Cir. 2014) ……………….. 9, 10, 30

*Spirit Airlines, Inc. v. U.S. Dep't of Transp.*, 687 F.3d 403 (D.C. Cir. 2012) …... 11

*Tillman v. Miller*, 133 F.3d 1402 (11th Cir. 1998) …………………………... 23, 24

*United States v. Carolene Products, Co.*, 304 U.S. 144 (1938) ………………… 13

*United States v. United Foods, Inc.*, 533 U.S. 405 (2001) …………………….. 11, 17

*Zalewska v. Cnty. of Sullivan, New York*, 180 F. Supp. 2d 486 (S.D.N.Y. 2002)
*aff'd*, 316 F.3d 314 (2d Cir. 2003) ………………………………………….. 7

*Zauderer v. Office of Disciplinary Counsel of*
*Supreme Court of Ohio*, 471 U.S. 626 (1985) .. 1, 9, 10, 11, 14, 15, 16, 17, 18, 19,
20, 21, 22, 24, 27, 28, 29, 30, 32

## **Other Authorities:**

Bergen, *et al.*, *When Little Things Mean A Lot*, 51 Journal of Law and
Economics, May 2008 ……………………………………………………… 5, 6

NYS Agriculture & Markets Law §214-h(1) …………………………..…….. 4, 18

## JURISDICTIONAL STATEMENT

This action pursuant 42 U.S.C. §1983 was commenced by Plaintiff-Appellant, Poughkeepsie Supermarket Corp. d/b/a Market Fresh in the United States District Court for the Southern District of New York on March 12, 2014. The District Court had subject matter jurisdiction pursuant to 28 USC §1331.

This appeal is from the District Court's October 15, 2015 Opinion and Order granting Defendant-Appellee County of Dutchess' motion pursuant to Fed.R.Civ.Pr. Rule 12(b)(6) to dismiss the Second Amended Complaint for failure to state a claim. *See*, *Poughkeepsie Supermarket Corp. v. Cty. of Dutchess, N.Y.*, No. 14-CV-1702 CS, 2015 WL 6128800 (S.D.N.Y. Oct. 15, 2015) (A8).

The judgment dismissing the action was entered on October 15, 2015 and disposes of all parties' claims. Market Fresh's Notice of Appeal was filed with the District Court on October 19, 2015. This Court has jurisdiction pursuant to 28 USC §1291.

## QUESTIONS PRESENTED

1. Whether the Second Amended Complaint states a First Amendment compelled commercial speech claim under *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 637 (1985).

1

2.  Whether the Second Amended Complaint states a First Amendment restricted commercial speech claim under *Central Hudson Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980).

### THE NATURE OF PLAINTIFF'S CLAIMS

Plaintiff *Poughkeepsie Supermarket Corp.* ("plaintiff"), a retail grocer in the City of Poughkeepsie, New York, is asserting a First Amendment challenge to Dutchess County's item pricing law ("Local Law" or "Law") which requires grocers to place price stickers or other markers on individual items that are offered for sale.  *See*, Second Amended Complaint ("SAC"), at ¶6, Local Law §3(a).  The Local Law was enacted in 1991 when computerized price scanning at grocery stores was new and there was a reasonable concern that an item's scanned price at the register might not be same as the price for that item as displayed on the shelf. Plaintiff contends in this lawsuit that the reliability, accuracy and completeness of computer generated price information, or Computer Assisted Checkout Systems (CACOS), have been amply demonstrated and firmly established for many years now and thus the financial burden still being imposed upon grocers by the Local Law's individual price marking requirement has long outlived its rationale.  *See*, SAC, at ¶¶6, 14-16.

In the District Court the County countered plaintiff's contention with this

2

summary of the Local Law's purpose:

> The legislative intent of this law is to provide clear information to consumers and promote their right to all reasonable information so that they can make informed choices about their purchases. The legislature recognized the availability of laser scanning devices but found that price marking was an "indispensable ingredient to a consumer's right to all reasonable information in order to make an informed purchase choice."

*See*, County Memorandum of Law, at 1, *citing* (SAC ¶6, Section 1. Legislative Intent). What was not included in the County's summary is the one part of the Law's Legislative Intent which the Legislature thought to italicize at the time of the Law's enactment:

> *The purpose of this Legislation is to require item pricing to protect the interest of the Consumer public, and to promote useful technology by permitting continued testing and development of the UNIVERSAL PRODUCT CODE CHECK-OUT SYSTEM without the removal of ITEM PRICE.*

SAC ¶6, Section 1. Legislative Intent (emphasis in original).

Plaintiff readily acknowledges that back in 1991 price marking may have been an "indispensable ingredient" to making sure that consumers had "all reasonable" pricing information. But the "continued testing and development" of the "product code check-out system" has had 25 years to run its course and it's now far too late in the day to seriously question the dependability of this "useful technology". Anyone who has done any shopping in the past decade knows that there is nothing at all lacking or ambiguous or unclear or unreliable about the

computer-generated pricing information that is being made available in grocery

stores in lieu of individual item stickers. Consumers are being given the benefit of

easy-to-read, state-mandated shelf tags that show each and every item's unit price

and total price,[1] and with every grocer's present ability to make scanners available

to consumers throughout their stores, coupled with every County's ability to

conduct accuracy inspections, there is nothing that item pricing could possibly add

to the prevention of deception. Indeed, the reliability and efficiency of

computerized price information is now so obvious and accepted, and its use so

ubiquitous, that only two of New York's 62 counties still have an item price

marking requirement like Dutchess County's, the other being New York County

where the requirement remains on the books but is no longer being enforced. This

is why it is difficult for any New York shopper (outside of Dutchess) to remember

the last time he or she saw a can of vegetables or a box of cereal with a price

---

[1] *See*, NYS Agriculture & Markets Law §214-h(1) ("Each person who sells, offers or exposes for sale in a retail store a consumer commodity shall disclose to the consumer the unit price and the total price of the commodity as provided in this section."), and §214-h (4) ("A consumer commodity sold, or offered for sale or exposed for sale, subject to this section, shall have the unit price and total price disclosed to the consumer in one of the following ways: a. if the item is conspicuously visible to the consumer, by the attachment of a stamp, tag or label directly under the item on the shelf on which the item is displayed, or, in the case of refrigerated items not displayed on shelves, in a manner to be prescribed by regulation; or b. if the item is not conspicuously visible to the consumer, by a sign or list conspicuously placed near the point of procurement, or by affixing the unit price and total price on the commodity itself.").

sticker on it. *Compare*, *Milnot Co. v. Richardson*, 350 F. Supp. 221, 224 fn 1 (N.D. Ill. 1972) ("It is not insignificant . . . that some eleven states which passed filled milk acts have since discarded them-five by repeal and six by court action. By far, the majority of states now permit wholesome and properly labeled filled milk products.").

What is more, empirical evidence shows that individual pricing laws not only fail to benefit consumers in grocery stores, they actually work to the consumers' determinant. *See*, *e.g.*, Bergen, *et al.*, *When Little Things Mean A Lot*, 51 Journal of Law and Economics, May 2008, at 236 (finding that grocery stores in New York that are subject to individual pricing laws ("IPL") have prices per item which "are higher than those of no-IPL stores by an average of 20-25 cents or 8.0-9.6 percent, per item", and concluding that "Item-pricing laws seem to harm consumers, even though the primary reason given by proponents for creating IPLs is to protect consumers").

Plaintiff's First Amendment challenge is predicated upon two aspects of the County's item pricing requirement. First, because of the relative uselessness and disutility of individual price marking the Local Law does not serve any legitimate governmental purpose.

Second, because individual price marking is labor intensive and thus significantly raises the cost of conducting promotional sales, the Local Law restricts plaintiff's protected commercial speech by placing a substantial financial burden upon plaintiff's ability to invite the public to enter into transactions on plaintiff's chosen terms. Every time plaintiff wants to hold a sale on most canned, bottled, jarred, boxed or other packaged item, plaintiff is forced to remove the regular price stickers from each and every such item on its shelves, replace them with the sale price stickers and then when the sale is over, remove the sale price stickers and replace them with the regular price stickers. As a result of this costly, labor intensive burden plaintiff is prevented or deterred from holding the number of sales that it desires.[2] This restriction results in a detriment not only to plaintiff but also to plaintiff's consumers. *See*, Bergen, *supra*, at 215 ("many price changes are not made under IPLs because of the costs of changing individual item price tags. This is costly for the sellers. But it may be harmful for the consumers as well.").

_____

[2] *See*, SAC, at ¶18 (alleging that "the item price marking requirements of §3 of the Local Law unreasonably and unnecessarily restrain, burden and interfere with plaintiffs ability to place items on promotional sales . . . and to otherwise change the prices of items when plaintiff deems such changes to be appropriate, necessary or desirable") and SAC, at ¶25 (alleging that the price marking requirements "prevent or restrain promotional sales and thereby substantially prevent item price reductions").

6

Today in 2016, a quarter of a century since the enactment of Dutchess'

Local Law, individual price stickers on every container or package being offered

for sale serves about as much purpose as would the paper filing of every document

already filed via ECF.  The time has come for the County to stop pretending[3] that it

has a legitimate interest in demanding that plaintiff pay tens of thousands of dollars

per year to place and remove price stickers that tell the consumer nothing more

than what is already clearly and reliably displayed on plaintiff's shelves as required

by State law.

But despite the common sense soundness (or at least the plausibility) of this

claim, the District Court summarily disagreed, stating in purely conclusory terms

that the Law's "Legislative Intent section . . . reasonably states that item pricing

*still* provides an *important* additional tool for customers." Opinion and Order, at 11

---

[3] *See*, SAC, at ¶26 ("Upon information and belief, the County's asserted or purported
interests in enforcing the item price marking requirements of §3 of the Local Law are
pretextual in that the County's real reasons, motivations or interests in enforcing the
Local Law are not the consumer-oriented interests set forth in the "Legislative Intent" of
§1 of the Local law or as presently stated by the County but are instead (1) the raising of
revenue for the County through the imposition of fines for noncompliance with the Local
Law's price marking requirements and/or (2) the creation of jobs by coercing retail food
establishments to hire additional employees to attempt to comply with the Local Law's
price marking requirements; neither of which constitutes a legitimate governmental
function or objective."). *Contrast Zalewska v. Cnty. of Sullivan, New York*, 180 F. Supp.
2d 486, 487 (S.D.N.Y. 2002) *aff'd,* 316 F.3d 314 (2d Cir. 2003) ("While plaintiff argues
that the Transportation Department's choice unduly and irrationally restricts her rights,
she does not argue that the choice was in any way pretextual and offers no evidence of
pretext.").

(A18) (emphasis added).[4]  Because the District Court could not have made this determination if it had accepted the SAC's factual allegations as true and then drew from those allegations all inferences favorable to plaintiff, and because the District Court made its determination without any evidentiary record, plaintiff appeals.

## STANDARDS OF REVIEW

### Rule 12(b)(6) Generally

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). This Court reviews *de novo* a District Court's grant of a Rule 12(b)(6) motion to dismiss, "accepting the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Pirro v. Nat'l Grid*, 590 F. App'x 19, 21 (2d Cir. 2014) (summary order), *citing Krys v. Pigott,* 749 F.3d 117, 128 (2d Cir. 2014); *see*, *also*, *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (same).

---

[4] Indeed, as though the County's motion was for summary judgment rather than Rule 12(b)(6) dismissal, the District Court faulted plaintiff for not "provid[ing] a plausible explanation as to why CACOS and shelf price labels preclude the item pricing from serving its stated purpose." *See*, Opinion and Order, at 11 (A18),

**The Two Levels of Scrutiny for First Amendment Commercial Speech**

It is well settled that commercial speech is "entitled to the protection of the First Amendment, albeit to protection somewhat less extensive than that afforded 'noncommercial speech.'" *Safelite Grp., Inc. v. Jepsen*, 764 F.3d 258, 261 (2d Cir. 2014), *quoting Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 637 (1985). It is equally settled that "[t]he regulation of commercial speech is subject to different levels of review, depending on the nature of the law." *Jepsen*, 764 F.3d at 261.

In *Central Hudson Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980), the Supreme Court "established that a restriction on commercial speech is subject to intermediate scrutiny, that is, a determination of whether the restriction directly advances a substantial governmental interest and is not overly restrictive." *Jepsen*, 764 F.3d at 261-262, *citing Central Hudson*, 447 U.S. at 564. If the Court determines that the commercial speech in question concerns lawful activity and is not misleading and that the asserted governmental interest is substantial, it must then determine "whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Central Hudson*, 447 U.S. at 566.

"In *Zauderer*, however, the Court created an exception that an informational disclosure law – as opposed to a prohibition on speech – was subject to rational review, that is, a determination of whether the required disclosure is reasonably related to the state's interest." *Jepsen*, 764 F.3d at 262, *citing Zauderer*, 471 U.S. at 651.  Specifically, the Court in *Zauderer* stated:

> We do not suggest that disclosure requirements do not implicate the advertiser's First Amendment rights at all.  We recognize that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech.  But we hold that an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers.

*Zauderer*, 471 U.S. at 651.

"Commercial disclosure requirements are treated differently from restrictions on commercial speech because mandated disclosure of accurate, factual, commercial information does not offend the core First Amendment values of promoting efficient exchange of information or protecting individual liberty interests.  Such disclosure furthers, rather than hinders, the First Amendment goal of the discovery of truth and contributes to the efficiency of the 'marketplace of ideas.'" *Nat'l Elec. Mfrs. Ass'n v. Sorrell,* 272 F.3d 104, 113-114 (2d Cir. 2001).

10

## ARGUMENT

### Introduction

There are two concerns raised in the Opinion below that merit preliminary comment.

The first is the District Court's *sua sponte* remark that "it is not clear . . . that this case involves speech at all" because the Local Law "regulates conduct, not speech . . ." Opinion and Order, at 6 (A13), *quoting Rumsfield v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 60-66 (2006). But the "conduct" at issue in this case is, of course, price marking and it is clear that price marking is a form of commercial speech. *See*, *Harris v. Quinn*, 134 S. Ct. 2618, 2639 (2014) ("Our precedents define commercial speech as "speech that does no more than propose a commercial transaction"), *quoting United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001); *Spirit Airlines, Inc. v. U.S. Dep't of Transp.*, 687 F.3d 403, 412 (D.C. Cir. 2012) ("The speech at issue here – the advertising of prices – is quintessentially commercial").[5]  Dutchess County's Law requiring individual item price marking must therefore be subject to First Amendment scrutiny even if it

---

[5] Applying both the *Zauderer* and *Central Hudson* levels of First Amendment scrutiny, the Court in *Spirit Airlines, Inc.* upheld the Department of Transportation's airline advertising rule, requiring airlines' print and online advertisements to display final total price most prominently, rather than separately listing airfare, taxes, and fees prominently or in same or larger size as total price. *Spirit Airlines, Inc.*, 687 F.3d at 412-414.

requires the disclosure of price information that is already being disclosed in another format under State law. *Compare*, *CTIA--The Wireless Ass'n v. City & Cty. of San Francisco, Cal.*, 827 F. Supp. 2d 1054 (N.D. Cal. 2011) *aff'd sub nom. CTIA-Wireless Ass'n v. City & Cty. of San Francisco, Cal.*, 494 F. App'x 752 (9th Cir. 2012) (provision of ordinance requiring cell phone retailers to display poster about potential risks arising from exposure to radiofrequency energy emissions and precautions to minimize such exposure was not reasonably necessary and unduly intruded on retailers' wall space, and thus infringed retailers' First Amendment rights, where all consumers who actually purchased cell phone would receive handout providing same information).

The second concern is the District Court's premise, stated in its Opinion without citation, that "if a statute that had a rational basis for its enactment were subject to challenge and possible judicial invalidation whenever a plaintiff, or a judge, believes it has outlived its usefulness, that would be the sort of legislation from the bench that is widely and rightfully condemned." Opinion and Order, at 12 (A19).[6] This view is directly contrary to settled law. The Supreme Court has repeatedly recognized that a statute rationally related to a legitimate governmental

---

[6] This issue concerning "legislation from the bench" was not briefed below because it was never raised prior to the issuance of the Court's Opinion.

objective at the time of its enactment might become unconstitutional over the

passage time and thus the proper subject of federal court review. *See*, *United*

*States v. Carolene Products, Co.,* 304 U.S. 144, 153 (1938) ("the constitutionality

of a statute predicated upon the existence of a particular state of facts may be

challenged by showing to the court that those facts have ceased to exist"); *G. D.*

*Searle & Co. v. Cohn*, 455 U.S. 404 (1982) (Court considers whether a statute "no

longer is rationally related to a legitimate state objective," in light of intervening

event); *Chastleton Corp. v. Sinclair,* 264 U.S. 543, 547-548 (1924) ("A law

depending upon the existence of [a] . . . certain state of facts to uphold it may cease

to operate if . . . the facts change even though valid when passed.").[7]

To be sure, in *Nashville, C. & St. L. Ry. v. Walters*, 294 U.S. 405, 414-15

(1935) the Tennessee Supreme Court, like the District Court below, held that it

---

[7] While this Court "has consistently held that a statute may not be invalidated because
there is evidence that the legislature was *mistaken*," *Jones v. Schneiderman*, 888 F. Supp.
2d 421, 425-27 (S.D.N.Y. 2012) (emphasis added), *citing*, *e.g.*, *Buss. for a Better N.Y. v.*
*Angello,* 341 Fed.Appx. 701, 704 (2d Cir. 2009) ("whether *in fact* the [challenged statute]
will accomplish its objectives is not the question: the Equal Protection Clause is satisfied
if we conclude that the [state] Legislature *rationally could have believed* that the [action]
would promote its objective."), that is not the issue presented in this case. Plaintiff is not
claiming that the enactment of Dutchess County's item pricing law was based upon a
mistaken understanding of the facts; plaintiff is claiming that those facts no longer apply.
*Contrast*, *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464 (1981) ("Where
there was evidence before the legislature reasonably supporting the classification,
litigants may not procure invalidation of the legislation merely by tendering evidence in
court that the legislature was mistaken.").

"could not 'any more' consider 'whether the provisions of the act in question have been rendered burdensome or unreasonable by changed economic and transportation conditions,' than it 'could consider changed mental attitudes to determine the constitutionality or enforceability of a statute.'" The U.S. Supreme Court reversed, making it clear that "[a] rule to the contrary is settled by the decisions of this Court" and that

> [a] statute valid as to one set of facts may be invalid as to another. A statute valid when enacted may become invalid by change in the conditions to which it is applied. The police power is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably."

*Walters*, 294 U.S. at 415.

**Point 1**
**The District Court misapplied *Zauderer***

Since the SAC alleges not only that Dutchess County's item pricing law no longer serves any legitimate governmental interest but that it also unduly burdens plaintiff's ability to engage in protected commercial speech, plaintiff's claim should be reviewed under *Central Hudson's* "intermediate scrutiny", not *Zauderer's* "reasonably related" standard. But even if this Court were to apply *Zauderer*, the allegations in the SAC are clearly sufficient to require reversal of the District Court's granting Rule 12 dismissal.

Some courts, in short-hand fashion, have referred to the *Zauderer* standard as "rational basis" review. *See*, *e.g.*, *New York State Rest. Ass'n v. New York City*

14

*Bd. of Health*, 556 F.3d 114, 132 (2d Cir. 2009) (referring to *Zauderer's* "rational basis test"); *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 92 (2d Cir. 2010) (referring to "rational basis review, as specified in *Zauderer*"). Some courts have expressly assumed, without specifically addressing the issue, that the "reasonably related" standard is "akin" to the "rational basis" standard for due process review. *See*, *e.g.*, *Pharm. Care Mgmt. Ass'n v. Rowe,* 429 F.3d 294, 316 (1st Cir. 2005) (the applicable constitutional scrutiny for government disclosure is "akin to the general rational basis test governing all government regulations under the Due Process Clause").[8]

Recently, however, it has been "underscored" that the "fit requirements" in *Zauderer* – that the mandated disclosure be "purely factual, uncontroversial, not unduly burdensome, and reasonably related to the Government's interest" – "are far more stringent than mere rational basis review." *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 33 (D.C. Cir. 2014) (Concurring Opinion) (Kavanaugh, J.):

> When the Supreme Court applies rational basis review, it does not attach a host of requirements of the kind prescribed by *Zauderer*. Rational basis review is extremely deferential and in this context would undoubtedly tolerate government mandates of moral or policy-laden messages, of controversial messages, of *burdensome labels*, of disclosures that are only indirectly related to the Government's interests. *Zauderer* tolerates none of

---

[8] As the Court observed in *Beeman v. Anthem Prescription Mgmt., Inc.*, 2007 WL 8433882, at *10 (C.D. Cal. 2007), in *Rowe* the First Circuit "declined to undertake a meaningful inquiry into the means-end relationship").

15

that. *Zauderer* tightly limits mandatory disclosures to a very narrow class that meets the various *Zauderer* requirements. So to the extent that some courts, advocates, and commentators have portrayed a choice between the "tough *Central Hudson* standard" and the "lenient *Zauderer* standard," I see that as a false choice. As I read it, *Zauderer* applied and elaborated on *Central Hudson*'s "tailored in a reasonable manner" requirement and established a demanding set of requirements that the Government must meet to justify a compelled commercial disclosure. The majority opinion properly does not equate *Zauderer* to mere rational basis review and properly insists that the mandatory disclosure here must meet all of the various *Zauderer* requirements. And the majority opinion and I agree on the following: To justify a compelled commercial disclosure, assuming the Government articulates a substantial governmental interest, the Government must show that the disclosure is purely factual, uncontroversial, not unduly burdensome, and reasonably related to the Government's interest.

*Am. Meat Inst.*, 760 F.3d at 33-34 (emphasis added).

But whether or not one equates the "reasonably related" standard used in informational disclosure cases with the "rational basis" standard used in due process cases, it is clear that under *Zauderer* it is not enough for the County to simply point to the obvious (indeed tautological) connection between putting price stickers on cans and boxes and "disclosing price information to consumers", *see*, County Memorandum of Law, at 2; nor is it enough for the District Court to simply posit a concern for "protecting the consuming public by providing all reasonable information at the time of a purchase choice (which takes place in the aisles, not at the register)." Opinion and Order, at 11 A18). There must be some showing that the County's price marking requirement actually addresses a genuine governmental

16

concern such as consumer deception or ignorance. *See*, *e.g.*, *New York State Rest.*
*Ass'n*, 556 F.3d at 132 (2d Cir. 2009) [interpreting *United States v. United Foods,*
*Inc.,* 533 U.S. 405 (2001) as "limit[ing] the rational basis test described in
*Zauderer* to those situations in which the law at issue furthers the State's interest in
preventing deception of consumers"]; *Milavetz, Gallop & Milavetz, P.A. v. United*
*States*, 559 U.S. 229, 249 (2010) (applying *Zauderer* to a Bankruptcy Code
disclosure requirement because it was "directed at *misleading* commercial speech"
and did not impose "an affirmative limitation on speech") (emphasis in original);
*Connecticut Bar Ass'n*, 620 F.3d at 95-96 (explaining that in *Milavetz* each
bankruptcy provision required disclosure of "specific information about the
bankruptcy process to consumer debtors whose *frequent ignorance and confusion*
*on that subject could otherwise subject them to easy deception*") (emphasis added).

### *Price Marking serves no Legitimate Governmental Purpose*

The County asserted below that the Local Law satisfies *Zauderer* because
price marking "is rationally related to the legitimate state interest of providing
unambiguous information and allowing for informed choices." *See*, County
Memorandum of Law, 5, *citing Zauderer*, 471 U.S. at 651. But the County made
no effort to explain how it is that the consumer is not *already* being provided with
"unambiguous information" and how it is that the consumer is not *already* being

17

"allowed" to make "informed choices." Nowhere in the County's motion papers
was it even suggested that there is anything misleading or incomplete or unclear or
ambiguous or unreliable about the pricing information that grocers are mandated to
place on their shelves by NYS Agriculture & Markets Law §214-h(1)[9] and are
allowed to rely upon in every New York State county except Dutchess. *Contrast*,
*New York State Rest. Ass'n v*, 556 F.3d at 135 (pointing out that "consumers'
distorted perceptions about how many calories food contained led to unhealthy
food choices" and that "calorie information . . . at the point-of-decision would help
consumers make informed, healthier food choices"); *contrast*, *also*, *Connecticut
Bar Ass'n*, 620 F.3d at 97 ("the testimony uniformly support[ed] defendants'
contention that Congress enacted [the Bankruptcy Abuse Prevention and Consumer
Protection Act] against a backdrop of documented confusion and deception in the
bankruptcy process and a manifest need for more information"); *Nat'l Elec. Mfrs.
Ass'n v. Sorrell*, 272 F.3d 104, 115 (2d Cir. 2001) (disclosure statute reasonably
related to Vermont's "substantial interest in protecting human health and the
environment from mercury poisoning").

Instead, the County argued to the District Court that under *Zauderer* it is
enough simply to state that there is a theoretical possibility of a computer

---

[9] *See*, Footnote 1, *Supra*.

malfunction or that price marking might make comparative shopping more convenient or keep more workers on the grocers' payrolls.[10] Indeed, the County went so far as to state that its price marking requirement does not even have to be useful anymore. *See*, County Memorandum of Law, at 5 ("even if the allegation that CACOS has superceded [sic] the necessity and *usefulness* of the item pricing requirement is assumed true, this fact alone does not render the law unconstitutional") (emphasis added). Clearly, this is not the law. *Compare*, *Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136, 146-47 (1994) ("[i]f the 'protections afforded commercial speech are to retain their force,' *Zauderer*, 471 U.S., at 648–649, 105 S.Ct., at 2280-2281, we cannot allow rote invocation of the words 'potentially misleading' to supplant the Board's burden to 'demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'"), *quoting Edenfield v. Fane*, 507 U.S. 761, 771 (1993).[11]

---

[10] *See*, *e.g.*, Defendant's Exhibit D-1 ("computer scanners are rarely 100% accurate"); Defendant's Exhibit D-2 ("no more than three scanners in a huge supermarket makes it inconvenient to compare the shelf price to the scanned price"); Defendant's Exhibit D-3 ("none of us would be able to compare prices of a brand-name product vs. a generic simply by comparing the price tags"); D-4 (reporting that "some key themes at an annual Labor Day rally in the City of Poughkeepsie" were "Press for better pay. Fight to protect workers' rights. And keep Dutchess County's supermarket item pricing.").

[11] In *Ibanez* a Florida attorney who was also a certified financial planner ("CFP") listed her CFP credential next to her name in advertisements in the yellow pages, on her

At the very least, the question of whether the County's price marking law is still reasonably aimed at a "harm" that is "real", *Ibanez*, *supra*, is an issue of fact that cannot possibly be determined on a Rule 12 motion. *Compare*, *Milnot Co. v. Richardson*, 350 F. Supp. at 224 (finding on cross-motions for summary judgment that the "dangers of confusion which led to the passage and judicial upholding of the Filled Milk Act many years ago . . . have long since ceased to exist."); *Ameritech Corp. v. United States*, 867 F. Supp. 721, 734 (N.D. Ill. 1994) (holding on cross-motions for summary judgment that "[t] may be that §533(b) would have passed constitutional muster at the time it was enacted in 1984, and earlier. But the business of cable television and of video programming in general has seen rapid technological and economic change in the past ten years.").[12]

---

business card, and on her law office stationery. The State Board of Accountants argued in a disciplinary proceeding that if Ibanez wanted to list herself as a CFP Florida law required that she would have to (1) provide a disclosure "in the immediate proximity" of the CFP designation that the recognizing agency is not affiliated with or sanctioned by the state or federal government and (2) set out the recognizing agency's requirements for recognition, including, but not limited to, education, experience, and testing. The Supreme Court held that "[t]he detail required" by the Florida law did not survive *Zauderer* scrutiny because it "effectively rule[d] out notation of the [CFP] designation on a business card or letterhead, or in a yellow pages listing." *Ibanez*, 512 U.S. at 146-147.

[12] *Contrast*, *Burlington N. R. Co. v. Dep't of Pub. Serv. Regulation*, 763 F.2d 1106, 1111 (9th Cir. 1985) ("The railroad has not presented evidence sufficient to persuade the court that changes in rail service in the last 16 years have so drastically altered the need for stations that the bases for the 1969 enactment no longer exist."); *Brotherhood of Locomotive Firemen & Enginemen v. Chicago, R.I. & P.R.R.*, 393 U.S. 129, 135–39 (1968) (inconclusive evidence of changing railroad safety needs insufficient to conclude

### *Two Illustrative Cases*

The following two cases are directly on point and make it clear that the SAC states a claim even under the *Zauderer* "reasonably related" standard.

First, in *Dwyer v. Cappell*, 762 F.3d 275 (3d Cir. 2014), an attorney asserted a First Amendment challenge against a proposed New Jersey attorney-conduct guideline ("Guideline 3") which banned attorney advertising with quotations from judicial opinions unless the opinions appeared in full.[13]  The District Court granted the defendant's motion for summary judgment, reasoning that "because [Guideline 3] requires full disclosure of a judicial opinion," it is "not a ban on speech but is instead a disclosure requirement", that a judicial quotation's potential to mislead is "self-evident" because, "[w]ithout the surrounding context of a full opinion, judicial quotations relating to an attorney's abilities could easily be misconstrued as improper judicial endorsement of an attorney, thereby threatening the integrity of the judicial system"; that the test for disclosure requirements is set forth in

_____

that regulation was unconstitutional).

[13] Specifically, Guideline 3" provided:
> An attorney or law firm may not include, on a website or other advertisement, a quotation or excerpt from a court opinion (oral or written) about the attorney's abilities or legal services.  An attorney may, however, present the full text of opinions, including those that discuss the attorney's legal abilities, on a website or other advertisement.

*Dwyer*, 762 F.3d at 278.

*Zauderer* and that under that standard the Guideline was "reasonably related to the

[S]tate's interest in preventing the deception of consumers" and that it was not

"unduly burdensome." *Dwyer*, 762 F.3d at 279, *quoting Dwyer v. Cappell*, 951

F.Supp.2d 670, 675 (D.N.J. 2013).[14]   The Third Circuit reversed.

Acknowledging that "disclosure requirements receive less rigorous scrutiny

than restrictions on speech" and that "Guideline 3 bears characteristics of both

categories", the Court of Appeals stated that it "need not decide whether it is a

restriction on speech or a disclosure requirement . . . because the Guideline is not

reasonably related to preventing consumer deception and is unduly burdensome.

Hence it is unconstitutional under even the less-stringent *Zauderer* standard of

scrutiny." *Dwyer*, 762 F.3d at 282.   In reaching this conclusion, the Court first

pointed out that "[a] disclosure requirement is "reasonably related to the State's

interest in preventing deception of consumers" where it could plausibly dispel the

misleading nature of the advertisement to those who read it", *Dwyer*, 762 F.3d at

283, *quoting Zauderer,* 471 U.S. at 651, and that in both *Zauderer* and in *Milavetz*

"there was a reasonable argument that the [required] disclosure remedied [a]

potentially misleading advertisement." *Dwyer*, 762 F.3d at 283.   The Court in

---

[14] The District Court also stated that "even if Guideline 3 were a restriction on speech
subject to the more rigorous intermediate scrutiny under *Central Hudson*" it would still
be constitutional."   At 259, *citing Dwyer,* 951 F.Supp.2d at 675 n. 6.

*Dwyer* then found that

> [i]n contrast, Guideline 3 does not require disclosing anything that could
> reasonably remedy conceivable consumer deception stemming from
> Dwyer's advertisement.  Providing a full judicial opinion does not reveal to
> a potential client that an excerpt of the same opinion is not an endorsement.
> Indeed, providing the full opinion may add only greater confusion.  A
> reasonable attempt at a disclosure requirement might mandate a statement
> such as "This is an excerpt of a judicial opinion from a specific legal dispute.
> It is not an endorsement of my abilities." Such a statement or its analogue
> would, we believe, likely suffice under *Zauderer.* Guideline 3 does not.

*Dwyer*, 762 F.3d at 283.

In the second illustrative case, *Tillman v. Miller*, 133 F.3d 1402 (11th Cir.

1998) (per curiam) (*cited in Dwyer*, 762 F.3d at 284), a workers' compensation

lawyer who advertized on television challenged Georgia's "Workers'

Compensation Truth in Advertising Act of 1995" which required that there appear

on the TV screen in boldface Roman font 36 point type on a dark background for a

minimum of five seconds: "NOTICE  Willfully making a false or misleading

statement or representation to obtain or deny workers' compensation benefits is a

crime carrying a penalty of imprisonment and/or a fine of up to $10,000.00."  The

Eleventh Circuit held that this requirement "violated the First Amendment because

the Act unjustifiably compelled speech."  In reaching this result the Court

reasoned:

> Even if we assume (1) that the principles established by *Zauderer* . . . apply
> here and not the seemingly more stringent standards for the state of *Central*

23

> *Hudson* . . . , and even if we assume (2) that the Act, which sets out its purpose expressly, can be defended by the State on grounds that may possibly be different from those expressed in the Act, and even if we assume (3) that a state may compel some disclosure in a commercial advertisement for a reason other than preventing the ad from deceiving or misleading consumers, Georgia has failed to show that what it seeks to compel plaintiff to do is justified and not too burdensome.

*Tillman*, 133 F.3d at 1403-1404. The *Tillman* Court found that "Georgia ha[d] presented no proof that television advertising of legal services causes fraudulent workers' compensation claims to be filed or that including the pertinent compelled disclosure would likely significantly reduce fraudulent claims in Georgia" and thus "Georgia [was] not justified in placing, on a television advertiser, *the burden of the cost* of educating the public about the criminal penalties for filing fraudulent claims." *Tillman*, 133 F.3d at 1403-1404 (emphasis added).

What is clear from these on-point analogous cases is that even under *Zauderer* the County has to present some proof that (1) there is a "real" harm being created by today's computer generated pricing information, (2) the County has a legitimate governmental interest in addressing that harm and (3) such governmental interest justifies the County's placing on its grocers "the burden of the cost" of individual price marking. Without such proof this Court may not summarily hold that plaintiff does not state a claim under *Zauderer*.

24

What is also clear from these cases is that it is not enough for the District Court to summarily opine, without receiving any supporting evidence, that item pricing "protect[s] the consuming public by providing all reasonable information at the time of a purchase choice (which takes place in the aisles, not at the register)", particularly when there has been no showing that the computer generated price information that shoppers are obtaining from the statutorily mandated tags on the shelves is any less reliable than, or different from, the price information being obtained from the price stickers.

Given that on a Rule 12 motion all of the SAC's factual allegations must be deemed true and the Court must draw from such allegations all reasonable inferences favorable to plaintiff, it was clear error for the District Court to dismiss plaintiff's claim without the benefit of any discovery and without being afforded an opportunity to prove that the County's item pricing law is no longer reasonably related to any legitimate governmental purpose.[15]

---

[15] *Compare*, *Edwards v. D.C.*, 755 F.3d 996, 1003 (D.C. Cir. 2014), where owners and operators of a sightseeing tour company brought a First Amendment challenge to the District of Columbia's tour guide licensing scheme which required for-hire tour guides to take and pass a 100-question test on the District's history, architecture, and geography. The District "rehearse[d] a plethora of harms", such as tour guides lacking "minimal knowledge about what and where they are guiding or directing people to," and the degradation of the "quality of the consumer's experience." *Edwards*, 755 F.3d at 1003. The D.C. Circuit held that

> [d]espite the District's seemingly talismanic reliance on these asserted problems,
> the record contains no evidence ill-informed guides are indeed a problem for the

25

**Point 2**
**Plaintiff States a Claim under *Central Hudson***

Because the SAC alleges that the County's price marking requirement serves no legitimate governmental purpose and that the $45,000 annual cost of compliance places an undue burden on commercial speech, plaintiff also states a claim under *Central Hudson*.

In order to convince the District Court that its price marking requirement does not appreciably burden plaintiff's ability to quickly and efficiently change its prices, the County pointed to plaintiff's promotional sales flyers (Defendant's Exhibit C) and argued that these ads indicate that plaintiff "communicates with its customers without restriction attributable to the local law." *See*, County Memorandum of Law, at 3, fn. 3.[16] Thus the County pitched an all-or-nothing approach and argued, without citation, that in order for its price-marking law to be

---

District's tourism industry. The only record 'evidence' supporting the District's beliefs regarding the perils of unlicensed tour guides is the District's 30(b)(6) deposition testimony that guides with criminal convictions *might* pose a danger, though no evidence exists they actually have. . . This will not do. . . Reliance on decades-old evidence says nothing of the present state of affairs. Current burdens demand contemporary evidence.

*Edwards*, 755 F.3d at 1003-1004.

[16] The SAC is clear, however, that plaintiff is not claiming that the law prevents it from conducting *any* promotional sales. Rather, plaintiff is claiming that the law makes it prohibitively expensive to conduct *all* of the promotional sales that plaintiff *would like* to conduct and thereby prevents or deters or chills plaintiff from engaging in as much protected commercial speech as it would otherwise. *See*, SAC, at ¶18.

26

deemed a "restriction" on plaintiff's ability to conduct promotional sales, it must

have the effect of restraining plaintiff from conducting *any* promotional sales:

> The SAC does not allege that because of this law plaintiff has not, does not, or cannot place items on sale. It only alleges it involves unnecessary (to it) labor costs to change the price stickers, thereby cutting into its profit. Whatever "restrictions" exist are purely theoretical as it obviously places items on sale as a matter of course, (Exhibit "C"), and if these restrictions become real, they would be purely self-imposed. The law itself does not chill plaintiff's right or ability to offer items for sale or "speak" with its customers.

*See*, County Memorandum of Law, at 7.[17]

The District Court essentially agreed with the County, holding that the labor

intensive relabeling that must occur every time plaintiff wishes to hold a sale is

merely an "incidental consequence" of the Local Law and it "does not change the

law's nature as one commanding only disclosure of "purely factual and

uncontroversial information." Opinion and Order, at 9 (A16), *quoting Zauderer*,

471 U.S. at 651. Using reasoning similar to the County's the District Court

pointed out that plaintiff does not allege "that Local Law No. 9 forbids

promotional sales, or even makes running them prohibitively expensive, and that

the "higher cost of running promotional sales does not sufficiently implicate the

---

[17] *See*, *also*, County Memorandum of Law, at 3 ("Despite any claim to the contrary in the SAC with respect to the law's 'chilling effect' on its ability to engage in commercial speech, plaintiff regularly offers items for sale.").

core of the First Amendment to plausibly justify *Central Hudson* review for a disclosure requirement." Opinion and Order, at 9 (A16).

There are two obvious problems with the District Court's and the County's approach. First, plaintiff does not have to allege that the law "prohibits" speech or that item pricing is "prohibitively expensive"; it need only allege that the law *burdens* or *restricts* speech. In *Pac. Frontier v Pleasant Grove City*, 414 F3d 1221, 1232 (10th Cir. 2005), for example, where the plaintiff made a First Amendment challenge to a solicitor licensing ordinance's $1,000 bond and fingerprint requirements, the Tenth Circuit held that the City failed to show that its legitimate interests in assuring peaceful use of private property and in protecting its citizens against crime "could not be served adequately by a more *limited restriction* on speech" (emphasis added). Plaintiff submits that if the posting of a mere $1,000 bond and the giving of fingerprints are enough to be "restrictions" on commercial speech, then an additional annual cost of $45,000 in order to maximize the use of promotional sales must also be deemed a "restriction" on commercial speech.

Second, the Local Law does not automatically fall under *Zauderer's* reasonably-related scrutiny simply because it "mandate[s] disclosure of accurate, factual, commercial information." Opinion and Order, at 7 (A14). When such a

28

disclosure law also has the effect of burdening commercial speech this Court will

instead apply *Central Hudson's* intermediate scrutiny.

In *Hayes v. New York Attorney Grievance Comm. of the Eight Judicial Dist.*,

672 F.3d 158, 167-68 (2d Cir. 2012) an attorney challenged a NYS Disciplinary

Rule requiring lawyers who identified themselves as certified specialists to

disclose that such certification is not a requirement for the practice of law.  In

holding that this informational disclosure requirement violated the First

Amendment this Court applied *Central Hudson*, not *Zauderer*:

> It [the disclosure] is sought to be justified on the basis that, absent this
> assertion, there would be a risk that some members of the public would
> believe that certification is required to practice law, thereby leading them to
> think that they must limit their choice of state-licensed lawyers to those who
> have been certified as specialists. . .  This possible belief that certification is
> needed to practice law is sufficiently strained to require some basis in the
> record to support it. *See, e.g., Florida Bar,* 515 U.S. at 626, 115 S.Ct. 2371
> ("'[A] governmental body seeking to sustain a restriction on commercial
> speech must *demonstrate* that the harms it recites are real....' ") (quoting
> *Rubin v. Coors Brewing Co.,* 514 U.S. 476, 487, 115 S.Ct. 1585, 131
> L.Ed.2d 532 (1995) (emphasis added)).  Although trial testimony is not
> required, the proponents of a restriction must either advance an interest that
> is self-evident or put something in the record to make the required
> "demonstrat[ion]."  No such demonstration is present in the record before us.
> And the alleged harm is surely not self-evident.  It is difficult to imagine that
> any significant portion of the public observing the thousands of lawyers
> practicing in New York without certification believe that all of them are
> acting unlawfully.  Because the second statement relies on "mere speculation
> or conjecture," *Edenfield v. Fane,* 507 U.S. 761, 770, 113 S.Ct. 1792, 123
> L.Ed.2d 543 (1993), it does not satisfy the *Central Hudson* test.

*Hayes*, 672 F.3d at 167-68.

In the Opinion below the District Court stated that "*Hayes* is not analogous to this case" because it "involved forcing one speaker to host or accommodate another speaker's message" while this case does not. Opinion and Order, at 8, fn. 2 (A15) (internal quotation marks omitted). That distinction, however, is not what this Court uses to decide whether to apply *Zauderer* or *Central Hudson*. Instead this Court uses the distinction between compelled disclosure which also suppresses speech and compelled disclosure which does not suppress speech. *See*, *e.g.*, *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 93 (2d Cir. 2010) ("because the regulations compel disclosure without suppressing speech, *Zauderer,* not *Central Hudson,* provides the standard of review."). Since plaintiff is claiming that the substantial cost of complying with the item pricing law has the effect of suppressing or deterring promotional sales, *Central Hudson*, not *Zauderer*, should apply. *Compare*, *Jepsen*, 764 F.3d at 263-64 (applying *Central Hudson*, rather than *Zauderer*, even though statute contained no express restrictions on speech, since "[p]rohibiting a business from promoting its own product on the condition that it also promote the product of a competitor is a very serious *deterrent* to commercial speech.") (emphasis added).

Another compelled disclosure case where this Court applied *Central Hudson's* intermediate scrutiny is *International Dairy Foods Ass'n v. Amestoy*, 92

30

F.3d 67, 69-74 (2d Cir. 1996). In that case dairy manufacturers challenged the

constitutionality of a Vermont statute which required them to identify products that

were, or might have been, derived from dairy cows treated with a synthetic growth

hormone used to increase milk production. This Court found that the District

Court abused its discretion in failing to grant preliminary injunctive relief to the

dairy manufacturers on First Amendment grounds, noting that "[t]he wrong done

by the labeling law to the dairy manufacturers' constitutional right not to speak is a

serious one that was not given proper weight by the district court." *Amestoy*, 92

F.3d at 71 (emphasis in original). In reaching this conclusion, the Court held:

> In our view, Vermont has failed to establish the second prong of the
> *Central Hudson* test, namely that its interest is substantial. In making this
> determination, we rely only upon those interests set forth by Vermont before
> the district court. *See Edenfield,* 507 U.S. at 766–67, 113 S.Ct. at 1798
> ("[T]he *Central Hudson* standard does not permit us to supplant the precise
> interests put forward by the State with other suppositions."). As the district
> court made clear, Vermont "does not claim that health or safety concerns
> prompted the passage of the Vermont Labeling Law," but instead defends
> the statute on the basis of "strong consumer interest and the public's 'right to
> know'...." 898 F.Supp. at 249. These interests are insufficient to justify
> compromising protected constitutional rights.

*Amestoy*, 92 F.3d at 72-73. Notably, in holding "that consumer curiosity alone is

not a strong enough state interest to sustain the compulsion of even an accurate,

factual statement," this Court cited *Zauderer* for the proposition that "disclosure

requirements are permissible 'as long as [they] are reasonably related to the State's

interest in preventing deception of consumers.'" *Amestoy*, 92 F.3d at 74, *quoting Zauderer,* 471 U.S. at 651.

Plaintiff submits that if the State's proffered concern in *Hayes* about a "possible belief that certification is needed to practice law" was deemed by this Court to be "sufficiently strained to require some basis in the record to support it", then this Court should also require "some basis in the record to support" the District Court's finding that the County's price marking law is still "reasonably related to the objectives of protecting consumers' interest in obtaining accurate, accessible price information and facilitating informed shopping." Opinion and Order, at 10-11 (A17-A18). Similarly, if this Court in *Amestoy* felt that satisfying "consumer curiosity" was not a "strong" enough governmental interest "to sustain the compulsion of even an accurate, factual statement" then the County's professed interests in making it less "inconvenient" or providing greater "ease" for shoppers to compare prices are also not "strong" enough "governmental" interests.

At the very least, plaintiff's allegations in the SAC state a claim under *Central Hudson* that cannot be summarily determined on a Rule 12 motion on the pleadings.

32

## CONCLUSION

Based upon the forgoing, the District Court's granting of the County's

motion to dismiss for failure to state a claim under F.R.Civ.P. Rule 12(b)(6) should

be reversed and this matter should be remanded for further proceedings.

Dated : January 6, 2016

/s Robert N. Isseks
ROBERT N. ISSEKS, ESQ. (RI 2041)
6 North Street
Middletown, NY  10940
845-344-4322

KEVIN D. BLOOM, ESQ.  (KB 5347)
Bloom & Bloom, P.C.
530 Blooming Grove Turnpike
P.O. Box 4323
New Windsor, New York 12553
(845) 561-6920

Attorneys for Plaintiff-Appellant

33

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate

Procedure, the foregoing brief is in 14-Point Times Roman proportional font

and contains 8,289 words and thus is in compliance with the type-volume

limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate

Procedure.

Dated : January 6, 2016

/s Robert N. Isseks
ROBERT N. ISSEKS, ESQ. (RI 2041)
6 North Street
Middletown, NY  10940
845-344-4322

KEVIN D. BLOOM, ESQ.  (KB 5347)
Bloom & Bloom, P.C.
530 Blooming Grove Turnpike
P.O. Box 4323
New Windsor, New York 12553
(845) 561-6920
Attorneys for Plaintiff-Appellant

**APPENDIX**

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

------------------------------------------------------------------------X

POUGHKEEPSIE SUPERMARKET CORP., d/b/a
MARKET FRESH, individually and on behalf of all
others similarly situated,

Plaintiff-Appellant,

-against-                                              15-3321

COUNTY OF DUTCHESS, NEW YORK,

Defendant-Appellee.

------------------------------------------------------------------------X

## TABLE OF CONTENTS – APPENDIX

District Court Docket Entries ............................................................................. A1

Notice of Appeal dated October 19, 2015 ............................................................ A6

Judgment of the District Court dated October 15, 2015 ....................................... A7

Opinion & Order dated October 15, 2015, 2015 ………………………….…… A8

Second Amended Complaint dated December 1, 2014 ..………………………... A20

CLOSED,APPEAL,COMPLEX-CSMGMT,ECF

# U.S. District Court
## Southern District of New York (White Plains)
## CIVIL DOCKET FOR CASE #: 7:14-cv-01702-CS

| | |
|---|---|
| Poughkeepsie Supermarket Corp. v. County of Dutchess, New York | Date Filed: 03/12/2014 |
| Assigned to: Judge Cathy Seibel | Date Terminated: 10/15/2015 |
| Cause: 42:1983 Civil Rights Act | Jury Demand: Plaintiff |
| | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Poughkeepsie Supermarket Corp.** | represented by | **Robert Nathan Isseks** |
| *individually and on behalf of all others* | | Robert N. Isseks |
| *similarly situated* | | 6 North Street |
| *doing business as* | | Middletown, NY 10940 |
| Market Fresh | | (845) 344-4322 |
| | | Fax: (845) 341-1760 |
| | | Email: isseks@isseksandsmith.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Kevin Daniel Bloom** |
| | | Bloom and Bloom, P.C |
| | | 530 Blooming Grove Turnpike |
| | | New Windsor, NY 12550 |
| | | (845)-561-6920 |
| | | Fax: (845)-561-0978 |
| | | Email: kbloom@hvc.rr.com |
| | | *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **County of Dutchess, New York** | represented by | **David Lewis Posner** |
| | | McCabe & Mack LLP |
| | | 63 Washington Street, P.O. Box 509 |
| | | Poughkeepsie, NY 12602 |
| | | 845-486-6800 |
| | | Fax: 845-486-7621 |
| | | Email: dposner@mccm.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| | | |

A1

| 03/12/2014 | 1 | COMPLAINT against County of Dutchess, New York. (Filing Fee $350.00, Receipt Number 465407007975) Document filed by Poughkeepsie Supermarket Corp. (lnl) (Entered: 03/19/2014) |
| 03/12/2014 | 2 | CIVIL COVER SHEET filed. (lnl) (Entered: 03/19/2014) |
| 03/12/2014 | | SUMMONS ISSUED as to County of Dutchess, New York. (lnl) (Entered: 03/19/2014) |
| 03/12/2014 | | Case Designated ECF. (lnl) (Entered: 03/19/2014) |
| 03/12/2014 | | Magistrate Judge Lisa Margaret Smith is so designated. (lnl) (Entered: 03/19/2014) |
| 03/12/2014 | 3 | STANDING ORDER IN RE PILOT PROJECT REGARDING CASE MANAGEMENT TECHNIQUES FOR COMPLEX CIVIL CASES IN THE SOUTHERN DISTRICT OF NEW YORK (See M-10-468 Order filed November 1, 2011). This case is hereby designated for inclusion in the Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York (the Pilot Project), unless the judge to whom this case is assigned determines otherwise. This case is designated for inclusion in the Pilot Project because it is a class action, an MDL action, or is in one of the following Nature of Suit categories: 160, 245, 315, 355, 365, 385, 410, 830, 840, 850, 893, or 950. The presiding judge in a case that does not otherwise qualify for inclusion in the Pilot Project may nevertheless designate the case for inclusion in the Pilot Project by issuing an order directing that the case be included in the Pilot Project. The description of the Pilot Project, including procedures to be followed, is attached to this Order. (Signed by Judge Loretta A. Preska on 10/31/2011) (lnl) (Entered: 03/19/2014) |
| 03/19/2014 | 4 | NOTICE OF APPEARANCE by Robert Nathan Isseks on behalf of Poughkeepsie Supermarket Corp.. (Isseks, Robert) (Entered: 03/19/2014) |
| 03/25/2014 | 5 | FIRST AMENDED COMPLAINT amending 1 Complaint against County of Dutchess, New York with JURY DEMAND.Document filed by Poughkeepsie Supermarket Corp.. Related document: 1 Complaint filed by Poughkeepsie Supermarket Corp..(Isseks, Robert) (Entered: 03/25/2014) |
| 04/30/2014 | 6 | NOTICE OF APPEARANCE by David Lewis Posner on behalf of County of Dutchess, New York. (Posner, David) (Entered: 04/30/2014) |
| 05/08/2014 | 7 | STIPULATION EXTENDING TIME TO ANSWER: IT IS HEREBY STIPULATED by and between the parties to this action that defendant's time to answer or move with respect to the Complaint be extended to June 2, 2014. SO ORDERED. County of Dutchess, New York answer due 6/2/2014. (Signed by Judge Cathy Seibel on 5/7/2014) (lnl) (Entered: 05/08/2014) |
| 06/06/2014 | 8 | LETTER MOTION for Conference addressed to Judge Cathy Seibel from David L. Posner, Esq. dated June 6, 2014. Document filed by County of Dutchess, New York.(Posner, David) (Entered: 06/06/2014) |
| 06/06/2014 | 9 | MEMO ENDORSEMENT on 8 LETTER MOTION for Conference addressed to Judge Cathy Seibel from David L. Posner, Esq. dated June 6, 2014. |

A2

| | | ENDORSEMENT: Application Granted. Conference to be held on 6/24/14 at 11:00 a.m. So Ordered. Status Conference set for 6/24/2014 at 11:00 AM before Judge Cathy Seibel. (Signed by Judge Cathy Seibel on 6/6/2014) (lnl) (Entered: 06/06/2014) |
|---|---|---|
| 06/13/2014 | 10 | NOTICE OF ADJOURNMENT OF CONFERENCE:The conference previously scheduled by this Court for June 24, 2014 is adjourned by this Court to July 8, 2014 at 11:00 a.m.at the Charles L. Brieant United States Courthouse, 300 Quarropas St., WhitePlains, NY 10601, Courtroom 621. Status Conference set for 7/8/2014 at 11:00 AM before Judge Cathy Seibel. (jty) (Entered: 06/16/2014) |
| 07/08/2014 | | Minute Entry for proceedings held before Judge Cathy Seibel: Status Conference held on 7/8/2014. Counsel to send joint status letter by August 8, 2014. In the meanwhile, the Court will hold of on scheduling discovery or motion(s). (Court Reporter Sue Ghorayeb) (lnl) (Entered: 07/09/2014) |
| 08/07/2014 | 11 | LETTER addressed to Judge Cathy Seibel from David L. Posner, Esq. dated August 7, 2014 re: Settlement reached. Document filed by County of Dutchess, New York.(Posner, David) (Entered: 08/07/2014) |
| 09/12/2014 | 12 | LETTER addressed to Judge Cathy Seibel from David L. Posner, Esq. dated September 12, 2014 re: Request that litigation continue to be held in abeyance. Document filed by County of Dutchess, New York.(Posner, David) (Entered: 09/12/2014) |
| 10/31/2014 | 13 | LETTER addressed to Judge Cathy Seibel from David L. Posner, Esq. dated October 31, 2014 re: Requesting a Pre-Motion Conference. Document filed by County of Dutchess, New York.(Posner, David) (Entered: 10/31/2014) |
| 11/04/2014 | 14 | MEMO ENDORSEMENT on 13 LETTER addressed to Judge Cathy Seibel from David L. Posner, Esq. dated October 31, 2014 re: Requesting a Pre-Motion Conference. ENDORSEMENT: Pre-motion conference to be held on: 11-13-2014 11:30 a.m. Opposing counsel to state position (by letter not to exceed 3 pages) in writing one week in advance. So Ordered. (Pre-Motion Conference set for 11/13/2014 at 11:30 AM before Judge Cathy Seibel) (Signed by Judge Cathy Seibel on 11/3/2014) (lnl) (Entered: 11/04/2014) |
| 11/06/2014 | 15 | LETTER addressed to Judge Cathy Seibel from Robert N. Isseks dated 11-06-2014 re: in response to defendant's pre-motion letter. Document filed by Poughkeepsie Supermarket Corp..(Isseks, Robert) (Entered: 11/06/2014) |
| 11/13/2014 | | Minute Entry for proceedings held before Judge Cathy Seibel: Pre-Motion Conference held on 11/13/2014. First amended complaint by 12/1/14. If not going to Amend, inform Mr. Posner when that decision is made. Motion to dismiss 1/9/15; opposition 2/9/15; reply 2/23/15. See transcript. (Motions due by 1/9/2015. Responses due by 2/9/2015. Replies due by 2/23/2015.) (Court Reporter Angela O'Donnell) (lnl) (Entered: 11/17/2014) |
| 12/01/2014 | 16 | SECOND AMENDED COMPLAINT amending 5 Amended Complaint against County of Dutchess, New York with JURY DEMAND.Document filed by Poughkeepsie Supermarket Corp.. Related document: 5 Amended Complaint |

A3

|  |  | filed by Poughkeepsie Supermarket Corp..(Isseks, Robert) Modified on 12/2/2014 (sj). Modified on 12/3/2014 (fk). (Entered: 12/01/2014) |
|---|---|---|
| 02/17/2015 | 17 | LETTER addressed to Judge Cathy Seibel from Robert N. Isseks, dated 2/6/2015, re: Counsel for the plaintiff writes: I write this letter to advise the Court that I made a mistake in a citation on page 10 of plaintiff's memorandum of law in opposition to defendant's motion to dismiss in the above matter, which was mailed to the Court on February 4, 2015. Instead of "Connecticut Bar Ass'n, 620 F.3 d at_81" it should read Connecticut Bar Ass'n, 620 F.3d at 95-96." Accordingly, I enclose a copy of the corrected page 10. Document filed by Poughkeepsie Supermarket Corp.. (lnl) (Entered: 02/18/2015) |
| 02/19/2015 | 18 | LETTER MOTION for Extension of Time to File Response/Reply *to defendant's motion to dismiss* addressed to Judge Cathy Seibel from David L. Posner, Esq. dated February 19, 2015. Document filed by County of Dutchess, New York.(Posner, David) (Entered: 02/19/2015) |
| 02/19/2015 | 19 | ORDER granting 18 Letter Motion for Extension of Time to File Response/Reply: Defendant's reply papers to be served, and all papers to be filed, by 3/2/15. (HEREBY ORDERED by Judge Cathy Seibel)(Text Only Order) (Seibel, Cathy) (Entered: 02/19/2015) |
| 03/02/2015 | 20 | MOTION to Dismiss . Document filed by County of Dutchess, New York. (Posner, David) (Entered: 03/02/2015) |
| 03/02/2015 | 21 | AFFIDAVIT of David L. Posner, Esq. in Support re: 20 MOTION to Dismiss .. Document filed by County of Dutchess, New York. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C - Part 1, # 4 Exhibit C - Part 2, # 5 Exhibit C - Part 3, # 6 Exhibit C - Part 4, # 7 Exhibit D-1, # 8 Exhibit D-2, # 9 Exhibit D-3, # 10 Exhibit D-4, # 11 Exhibit E-1, # 12 Exhibit E-2)(Posner, David) (Entered: 03/02/2015) |
| 03/02/2015 | 22 | MEMORANDUM OF LAW in Support re: 20 MOTION to Dismiss . . Document filed by County of Dutchess, New York. (Posner, David) (Entered: 03/02/2015) |
| 03/02/2015 | 23 | AFFIDAVIT OF SERVICE of Notice of Motion, Affidavit and Exhibits served on Robert N. Isseks, Esq. on January 9, 2015. Service was made by Mail. Document filed by County of Dutchess, New York. (Posner, David) (Entered: 03/02/2015) |
| 03/02/2015 | 24 | AFFIDAVIT OF SERVICE of Memorandum of Law in Support of Dismissal served on Robert N. Isseks, Esq. on January 9, 2015. Service was made by Mail. Document filed by County of Dutchess, New York. (Posner, David) (Entered: 03/02/2015) |
| 03/02/2015 | 25 | MEMORANDUM OF LAW in Opposition re: 20 MOTION to Dismiss . . Document filed by Poughkeepsie Supermarket Corp.. (Isseks, Robert) (Entered: 03/02/2015) |
| 03/03/2015 | 26 | REPLY MEMORANDUM OF LAW in Support re: 20 MOTION to Dismiss . . Document filed by County of Dutchess, New York. (Posner, David) (Entered: 03/03/2015) |

A4

| 03/03/2015 | 27 | AFFIDAVIT OF SERVICE of Reply Memorandum of Law in Support of Dismissal served on Robert N. Isseks, Esq. on March 2, 2015. Service was made by Mail. Document filed by County of Dutchess, New York. (Posner, David) (Entered: 03/03/2015) |
|---|---|---|
| 10/15/2015 | 28 | OPINION & ORDER granting 20 Motion to Dismiss. For the reasons stated above, Defendant's Motion to Dismiss Plaintiffs Second Amended Complaint is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 20), and close the case. (Signed by Judge Cathy Seibel on 10/15/2015) (rj) (Entered: 10/15/2015) |
| 10/15/2015 | | Transmission to Judgments and Orders Clerk. Transmitted re: 28 Order on Motion to Dismiss, to the Judgments and Orders Clerk. (rj) (Entered: 10/15/2015) |
| 10/15/2015 | 29 | CLERK'S JUDGMENT: That for the reasons stated in the Court's Opinion and Order dated October 15, 2015, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint is granted; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 10/15/2015) (Attachments: # 1 Notice of Right to Appeal, # 2 Notice of Right to Appeal)(dt) (Entered: 10/15/2015) |
| 10/19/2015 | 30 | NOTICE OF APPEAL from 28 Order on Motion to Dismiss, 29 Clerk's Judgment,. Document filed by Poughkeepsie Supermarket Corp.. Filing fee $ 505.00, receipt number 0208-11523264. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Bloom, Kevin) (Entered: 10/19/2015) |
| 10/19/2015 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 30 Notice of Appeal. (tp) (Entered: 10/19/2015) |
| 10/19/2015 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 30 Notice of Appeal, filed by Poughkeepsie Supermarket Corp. were transmitted to the U.S. Court of Appeals. (tp) (Entered: 10/19/2015) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/21/2015 09:38:18 | | |
| **PACER Login:** | jas427paddy:2809324:0 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** | 7:14-cv-01702-CS |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

A 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
POUGHKEEPSIE SUPERMARKET CORP. d/b/a
ASSOCIATED SUPERMARKET, individually and on
behalf of all others similarly situated,

                   Plaintiff,                          **NOTICE OF APPEAL**

      -against-                                14 CIV 1702 (CS)

COUNTY OF DUTCHESS, NEW YORK,

                 Defendant.
------------------------------------------------------------------------X

     Notice is hereby given that POUGHKEEPSIE SUPERMARKET CORP. d/b/a

ASSOCIATED SUPERMARKET, plaintiff above named, hereby appeals to the United

States Court of Appeals for the Second Circuit from the judgment of the United States

District Court for the Southern District of New York entered on the 15th day of October,

2015, which dismissed the case in its entirety in favor of the defendant and against the

plaintiff.

Dated:  Middletown, New York
        October 19, 2015                 s/*Kevin D. Bloom*
                                        KEVIN D. BLOOM, ESQ.  (KB 5347)
                                        Bloom & Bloom, P.C.
                                        P.O. Box 4323
                                        New Windsor, New York 12553
                                        (845) 561-6920

                                        ROBERT N. ISSEKS, ESQ. (RI 0241)
                                        6 North Street
                                        Middletown, New York 10940
                                        (845) 344-4322

                                        Attorneys for Plaintiff



**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
POUGHKEEPSIE SUPERMARKET COR. d/b/a
MARKET FRESH, individually and on behalf of
all others similarly situated,

                  Plaintiff,

        -against-

COUNTY OF DUTCHESS, NEW YORK,
             Defendant.
------------------------------------------------------------X

**14 CIVIL** 1702 (CS)

**JUDGMENT**

        Before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended

Complaint ("SAC"), and the matter having come before the Honorable Cathy Seibel, United States

District Judge, and the Court, on October 15, 2015, having rendered its Opinion and Order granting

Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, and directing the Clerk of

Court to close the case, it is,

        **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Opinion and Order dated October 15, 2015, Defendant's Motion to Dismiss Plaintiff's

Second Amended Complaint is granted; accordingly, the case is closed.

**Dated:** New York, New York
       October 15, 2015

                          **RUBY J. KRAJICK**

                             **Clerk of Court**
        BY:

                             **Deputy Clerk**

                      **THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON** _____

A7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————

POUGHKEEPSIE SUPERMARKET CORP. d/b/a/
MARKET FRESH, individually and on behalf of all others
similarly situated,

Plaintiff,                          14-CV-1702 (CS)

- against -                                    **OPINION & ORDER**

COUNTY OF DUTCHESS, NEW YORK,

Defendant.

———————————————————

Seibel, J.

Before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended

Complaint ("SAC"). (Doc. 16.) For the reasons stated below, the Motion is GRANTED.

**I.    Background**

A. Facts

For purposes of this Motion, the Court accepts as true the facts (but not the conclusions)

alleged by Plaintiff in the SAC.

Plaintiff Poughkeepsie Supermarket Corp. (d/b/a Market Fresh) has operated a retail food

establishment ("the store") in the City of Poughkeepsie since 2011. (SAC ¶ 5.) In 1991,

Defendant County of Dutchess enacted Local Law No. 9, which was thereafter amended by

Local Law No. 3 of 1998 and Local Law No. 2 of 2011. (SAC ¶ 6.) Under "Legislative Intent,"

Local Law No. 9 states:

> This Legislature hereby finds and determines that the Consumers in Dutchess
> County are entitled to clear information, setting forth the prices of consumer
> commodities which they purchase from retail supermarkets. A clear, easily-
> enforceable item-pricing statute will promote the Dutchess County consumers'
> right to all reasonable information in order that these consumers are able to make
> informed choices about their purchases.

1
A8

The Legislature also finds and declares that there is technology utilizing a laser scanning device offering numerous efficiencies and economies to the operation of the retail food industry. The Legislature further finds that price marking constitutes an indispensable [sic] ingredient to a consumer's right to all reasonable information in order to make an informed purchase choice.

*The purpose of this Legislation is to require item pricing to protect the interest of the Consumer public, and to promote useful technology by permitting continued testing and development of the UNIVERSAL PRODUCT CODE CHECK-OUT SYSTEM without the removal of ITEM PRICE.*

(*Id.* ¶ 6) (emphasis in original). In relevant part, Local Law No. 9 provides that a "retail food establishment in Dutchess County which sells, offers for sale or exposes for sale a consumer commodity shall clearly disclose on each item, the selling price of said consumer commodity. The selling price may be shown by stamp, tag, label, or otherwise, market [sic] in Arabic numeral on each item." (*Id.* ¶ 6.) "Retail food establishment" is defined, in pertinent part, as "a store within a general retail merchandise store selling primarily food at retail for off-premises consumption, provided that such store had annual gross sales in the previous calendar year of at least two million dollars." (*Id.*) Under Local Law No. 9, non-compliance is "punishable by the payment of a Civil Penalty in the sum of not more than one hundred dollars for each such violation, with a maximum fine of SEVEN THOUSAND FIVE HUNDRED dollars per inspection." (*Id.*) (emphasis in original).

Since opening in 2011, the store has had gross annual sales in excess of two million dollars and therefore is subject to Local Law No. 9. (*Id.* ¶ 7.) The store has been inspected for compliance with Local Law No. 9 several times, and each time has been found in non-compliance. (*Id.* ¶¶ 8-11.)[1]

---

[1] At the initial inspection for compliance with Local Law No. 9, in 2011, the County issued an order directing Plaintiff to "correct immediately." (SAC ¶ 8.) On June 14, 2012, at the second inspection, the store was fined $5,000. (*Id.* ¶ 9.) On August 20, 2013 and December 2, 2013, the store was fined $7,500. (*Id.* ¶¶ 10-11)



Plaintiff points to several mechanisms, aside from item price labels, that provide consumers with information regarding the cost of products in retail food establishments. (*See id.* ¶ 20.) First, Plaintiff alleges that in the years since Local Law No. 9 was enacted, Computer Assisted Checkout Systems ("CACOS") have become an "accurate and industry-accepted" mechanism for pricing consumer goods. (*Id.* ¶ 15.) Second, shelf tags, which are state-mandated, must list an item's unit price, retail price, and bar code. (*Id.* ¶ 19.) Finally, grocers can make price scanners available throughout their stores, although Plaintiff does not state whether it does so, and County inspectors can spot-check the accuracy of a store's CACOS. (*Id.* ¶ 20.)

As a result of Local Law No. 9, Plaintiff must change the label on every individual item if it wishes to change the price of a product. (*Id.* ¶ 18.) This creates a burden on Plaintiff's ability to hold promotional sales or otherwise change prices. (*Id.*) For example, when Plaintiff wishes to hold a single-day sale, it must – if it wishes to comply with Local Law No. 9 – change the label on every sale item, and then change the labels back the following day. (*Id.*) Plaintiff estimates that compliance with Local Law No. 9 will cost approximately $45,000 annually. (*Id.*) Plaintiff alleges that the item price requirement "substantially increase[s] the prices that must be charged to consumers in order to cover the costs incurred in complying with" Local Law No. 9, and "prevent[s] or restrain[s] promotional sales and thereby substantially prevent[s] item price reductions." (*Id.* ¶ 25.)

Plaintiff further alleges that the County's "asserted or purported interests" in Local Law No. 9 are pretextual, and that the County's real reasons for the law's continued enforcement are "(1) the raising of revenue for the County through the imposition of fines for noncompliance with the Local Law's price marking requirements and/or (2) the creation of jobs by coercing

$\overset{3}{A}$10

retail food establishments to hire additional employees to attempt to comply with" Local Law
No. 9. (*Id.* ¶ 26.)

B. Procedural History

Plaintiff sues under 42 U.S.C. § 1983 for deprivations of rights, privileges, and
immunities secured by the First Amendment of the U.S. Constitution, based on Defendant's item
price labeling requirement. (*Id.* ¶ 3.) Plaintiff requests declaratory and injunctive relief and
compensatory damages. (*Id.*) Defendant has moved to dismiss under Federal Rule of Civil
Procedure 12(b)(6) for failure to state a claim on which relief can be granted. (Doc. 20.)

II.   **Discussion**

A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim
has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual
allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires
more than labels and conclusions, and a formulaic recitation of the elements of a cause of action
will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks
omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure
from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of
discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

$\overset{4}{A}_{\text{II}}$

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

B. Documents that May Be Considered

When deciding a motion to dismiss, ordinarily the court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). But the court can also consider documents where the complaint relies heavily on their terms and effect – that is, documents "integral" to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.*

Here, Defendant's counsel attaches several documents to his affidavit. (Doc. 21.) It is untenable to argue, and Defendant does not actually attempt to do so, that any of the following documents are "integral" to the SAC: a letter of notification regarding an April 2014 fine not mentioned in the SAC, (Ex. B); the store's promotional flyers, (Ex. C); and various responses to

$\overset{5}{A}12$

the potential repeal of Local Law No. 9, (Exs. D, E). With the exception of Exhibit A, which is Plaintiff's SAC, none of the attached documents may be considered at this stage in the case.

### C. First Amendment Claim

#### a. Applicability of First Amendment

As an initial matter, it is not clear to the Court that this case involves speech at all. "As a general matter, [Local Law No. 9] regulates conduct, not speech. It affects what [supermarkets] must *do* . . . not what they may or may not *say*." *Rumsfield v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 60 (2006) (emphasis in original). It "does not dictate the content of the speech at all." *Id.* at 62. Nor does it involve conduct with an expressive nature, such as flag-burning. *See id.* at 65-66. Accordingly, this Court is dubious that the First Amendment applies to Local Law No. 9. Because Defendant has not raised this issue, however, the Court considers the statute under the First Amendment in an excess of caution.

#### b. Level of Scrutiny

Before deciding whether Plaintiff states a plausible constitutional challenge against Local Law No. 9, this Court must determine the level of scrutiny to apply. It is well-settled that commercial speech is afforded protection under the First Amendment of the U.S. Constitution. Courts have acknowledged, however, "the 'commonsense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562 (1980) (internal quotation marks omitted). "The Constitution therefore accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Id.* at 562-63.

$$A\overset{6}{\beta}$$

Additionally, not all statutes concerning commercial speech are reviewed with the same level of scrutiny. "Commercial disclosure requirements are treated differently from restrictions on commercial speech because mandated disclosure of accurate, factual, commercial information does not offend the core First Amendment values of promoting efficient exchange of information or protecting individual liberty interests." *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 113-14 (2d Cir. 2001). Indeed, "[p]rotection of the robust and free flow of accurate information is the principal First Amendment justification for protecting commercial speech, and requiring disclosure of truthful information promotes that goal." *Id.* Accordingly, a higher level of scrutiny is applied to commercial speech restrictions than to compelled commercial speech.

Under *Central Hudson*, restrictions on commercial speech are entitled to intermediate scrutiny. 447 U.S. at 564; *id.* at 573 (Blackmun, J., concurring) (stating explicitly that *Central Hudson* provides for intermediate scrutiny). Disclosure requirements, on the other hand, generally must only be "reasonably related to the State's interest in preventing deception of consumers," *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985), or in increasing consumer awareness, *Sorrell*, 272 F.3d at 115. Circuit courts have referred to the standard articulated in *Zauderer* as rational basis review. *See, e.g.*, *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 92 (2d Cir. 2010); *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 132 (2d Cir. 2009) (*NYSRA*).

Departing from the general categorization articulated in *Central Hudson* and *Zauderer*, a limited number of Second Circuit cases have applied intermediate scrutiny to disclosure requirements. These cases, however, are few and narrow. For example, in *Safelite Group, Inc. v. Jepsen*, 764 F.3d 258, 264 (2d Cir. 2014), a disclosure requirement was reviewed under intermediate scrutiny where an insurance claims management company was prohibited from

$\overset{7}{A}14$

recommending its affiliate auto-glass repair company unless it also disclosed the name of a competitor repair company. The Second Circuit found that intermediate scrutiny applied because "the disclosure required here compels speech that goes beyond the speaker's own product or service," and because "[t]he speech requirement here does more to inhibit First Amendment values than to advance them." *Id.* In another such case, *International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 72-73 (2d Cir. 1996), intermediate scrutiny was used to review a disclosure requirement that compelled dairy producers to disclose when a product contained dairy derived from cows treated with growth hormones. The decision in *Amestoy*, however, was "expressly limited to cases in which a state disclosure requirement is supported by no interest other than the gratification of 'consumer curiosity.'" *Sorrell*, 272 F.3d at 115 n.6 (quoting *Amestoy*, 92 F.3d at 73).[2]

This case involves neither a mandated disclosure about something other than the speaker's own products, nor information to be provided for no reason other than curiosity. That there is nothing exceptional about this case that would avoid application of the usual rule that disclosure requirements are reviewed under the rational basis test is confirmed by *NYSRA*. There, the Second Circuit applied rational basis review to a challenged law requiring certain food establishments to include calories on their menus. 556 F.3d at 131-34. While the plaintiff argued the law should undergo intermediate scrutiny, the Second Circuit disagreed, finding that *Zauderer* was the proper precedent because the law in question required disclosure of purely

---

[2] Plaintiff also cites *Hayes v. New York Attorney Grievance Committee*, 672 F.3d 158 (2d Cir. 2012), to support the notion that Local Law No. 9 should be reviewed under intermediate scrutiny. While *Hayes* provides no explanation as to why *Central Hudson*, instead of *Zauderer*, was followed, this Court finds that *Hayes* is not analogous to this case. In *Hayes*, the attorney plaintiff was explicitly prohibited from listing his certifications unless he included several disclaimers. *Id.* at 161-62. It thus involved forcing "one speaker to host or accommodate another speaker's message." *Rumsfeld*, 547 U.S. at 63. Local Law No. 9 does not require anything other than the speaker's own purely factual, uncontroversial, accurate commercial speech. *See Sorrell*, 272 F.3d at 113. Plaintiff's complaint here is not based on anything it is prohibited from saying or forced to say, but rather on incidental costs arising from the law's requirements, and therefore is not similar to the facts of *Hayes*.

factual information that served a purpose greater than consumer curiosity. *See id.* at 132-34. As the court in *Sorrell* explained, *Zauderer* is properly applied to a disclosure requirement where "the statute's goal [is not] inconsistent with the policies underlying First Amendment protection of commercial speech . . . and the reasons supporting the distinction between compelled and restricted commercial speech." *Sorrell*, 272 F.3d at 115.

Plaintiff argues that the law should be reviewed under *Central Hudson* because the item price disclosure requirements "restrain, burden and interfere with plaintiff's ability to place items on promotional sales . . . and to otherwise change the prices of items when plaintiff deems such changes to be appropriate, necessary or desirable." (SAC ¶ 18.) To support this notion, Plaintiff points to the relabeling that must occur every time the store wishes to hold a sale. (*Id.*) But this incidental consequence of Local Law No. 9 does not change the law's nature as one commanding only disclosure of "purely factual and uncontroversial information." *Zauderer*, 471 U.S. at 651. Plaintiff does not allege, for instance, that Local Law No. 9 forbids promotional sales, or even makes running them prohibitively expensive. The higher cost of running promotional sales does not sufficiently implicate the core of the First Amendment to plausibly justify *Central Hudson* review for a disclosure requirement. Describing the law as restricting speech – when it does no more than compel disclosure and thereby incidentally make Plaintiff's operations a bit more burdensome – is a "formulaic recitation," *Twombly*, 550 U.S. at 555, that does not render it plausible that intermediate scrutiny applies. Accordingly, rational basis, not intermediate scrutiny, is the proper standard to apply in this case.

### c.   Rational Basis Review

The Court now turns to the question of whether Plaintiff has plausibly pleaded that Local Law No. 9 cannot survive rational basis review. The Supreme Court has "recognize[d] that



unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech," but has held that the speaker's First Amendment rights are adequately protected "as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers," *Zauderer*, 471 U.S. at 651, or increasing consumer awareness, *Sorrell*, 272 F.3d at 115. It is self-evident that it is easier to locate the price on an item, rather than on a shelf (where tags may fall off or when items may be mis-shelved away from their corresponding tags) or via a scanner (which may be distant from the shelf where the consumer wishes to make his or her buying decision), and that without a sticker on the item it is more difficult to monitor the CACOS to see if it accurately reflects the product's price.

Plaintiff argues that Local Law No. 9 fails rational basis review because: (1) item pricing is no longer needed to serve the law's stated purpose, in light of other available sources of price information; (2) the stated legislative intent of the statute is now pretextual; and (3) compliance with the law is burdensome. Local Law No. 9 states that the law "will promote the Dutchess County consumers' right to all reasonable information in order that these consumers are able to make informed choices about their purchases," and that even in light of available technology "price marking constitutes an indispensible [*sic*] ingredient to a consumer's right to all reasonable information in order to make an informed purchase choice." (SAC ¶ 6.)[3] Individually pricing products in retail food establishments is, as discussed above, reasonably related to the objectives of protecting consumers' interest in obtaining accurate, accessible price

---

[3] The Legislative Intent section lists a third reason for the law:

> *The purpose of this Legislation is to require item pricing to protect the interest of the Consumer public, and to promote useful technology by permitting continued testing and development of the UNIVERSAL PRODUCT CODE CHECK-OUT SYSTEM without the removal of ITEM PRICE.*

(SAC ¶ 6) (emphasis in original). While the Court understands Plaintiff's argument that this paragraph demonstrates that Local Law No. 9 was meant for a time when CACOS was in development, Plaintiff does not plausibly refute that the law has a rational basis, regardless of this paragraph.

information and facilitating informed shopping. While conceding that Local Law No. 9 had a

rational basis at the time it was enacted, Plaintiff argues that item pricing is no longer reasonably

related to these objectives because there are other available means of disseminating price

information. This argument fails because Plaintiff does not provide a plausible explanation as to

why CACOS and shelf price labels preclude the item pricing from serving its stated purpose.

Indeed, the Legislative Intent section accounts for the presence of a CACOS-like product, and

reasonably states that item pricing still provides an important additional tool for customers.

Moreover, "[b]ecause the First Amendment interests implicated by disclosure requirements are

substantially weaker than those at stake when speech is actually suppressed, [it is not]

appropriate to strike down such requirements merely because other possible means by which the

State might achieve its purposes can be hypothesized." *Zauderer*, 471 U.S. at 651 n.14.

Accordingly, Plaintiff has not plausibly alleged that there is no longer a rational basis for

requiring item pricing.

Similarly, Plaintiff argues that the legislative intent is now pretextual, and that the true

reason for the continued enforcement of the law is to collect penalty payments and force retail

food stores to employ more people. (SAC ¶ 26.) This argument does not help Plaintiff to state a

claim. First, while Plaintiff may believe the statute no longer serves any useful purpose, Plaintiff

provides no facts rendering plausible the conclusion that the County legislature shares that belief.

Second, Plaintiff in advancing this argument focuses only on the stated legislative purpose of

permitting testing and development of CACOS, and ignores the stated legislative purpose of

protecting the consuming public by providing all reasonable information at the time of a

purchase choice (which takes place in the aisles, not at the register). Even if the former purpose

has been overtaken by events, the latter has not. Third, Plaintiff provides no authority, and the

Court has found none, for the proposition that in conducting First Amendment rational-basis review, a court should disregard the legislature's initial, rational intent and instead inquire whether the passage of time has rendered its reasoning less powerful. Indeed, if a statute that had a rational basis for its enactment were subject to challenge and possible judicial invalidation whenever a plaintiff, or a judge, believes it has outlived its usefulness, that would be the sort of legislation from the bench that is widely and rightfully condemned. Once a law is enacted and passes constitutional muster, it is the political process that must change it if its costs no longer exceed its benefits, at least where, as here, its continued enforcement is not arbitrary or irrational.

Plaintiff also argues that Local Law No. 9 is unduly burdensome based on the resources and labor that must be expended to comply. (*Id.* ¶ 17.) That the law requires some effort by Plaintiff to come into compliance does not negate the rationality of the law. The government is allowed to impose minor burdens on commercial speech. *See id.* at 651. Indeed, compliance with most compelled disclosure laws will logically entail some expense. As Plaintiff has not alleged anything extraordinary about the burden of complying with Local Law No. 9, any incidental costs of labeling do not impact the finding of a rational basis.

## III.   Conclusion

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 20), and close the case.

## SO ORDERED.

Dated: October 15, 2015
       White Plains, New York

Cathy Seibel
CATHY SEIBEL, U.S.D.J.

12
A19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
POUGHKEEPSIE SUPERMARKET CORP. d/b/a
MARKET FRESH, individually and on                              14 CIV 1702 (CS)
behalf of all others similarly situated,

                              Plaintiff,               **SECOND AMENDED
                                                          COMPLAINT**

            -against-

COUNTY OF DUTCHESS, NEW YORK,                          **DEMANDS TRIAL
                                                          BY JURY**

                              Defendant.
------------------------------------------------------------------X

        Plaintiff, Poughkeepsie Supermarket Corp. d/b/a Market Fresh, complaining of the

defendants, individually and on behalf of all others similarly situated, alleges as follows:

                                **PARTIES**

        1. At all times hereinafter mentioned plaintiff was, and continues to be, a New

York corporation with its principal offices located in Poughkeepsie, New York. Plaintiff

is engaged in the business of operating a retail food establishment (grocery store) in the

City of Poughkeepsie.

        2. Defendant County of Dutchess is a municipality located in the Southern

District of New York.

                        **JURISDICTION AND VENUE**

        3. This is a civil action authorized by 42 U.S.C. §1983 seeking declaratory and

injunctive relief and compensatory damages to redress the deprivations, under the color

of state law, of rights, privileges and immunities secured to plaintiff by the First

A20

Amendment to the United States Constitution. Jurisdiction is conferred by 28 U.S.C. §§1331, 1343, and 2201.

4. This action is properly filed in the United States District Court for the Southern District of New York, as authorized by 28 U.S.C. §1391, inasmuch as jurisdiction of this action is not founded on diversity of citizenship, each claim arose within the Southern District of New York and the defendant municipality is located in the Southern District of New York.

## STATEMENT OF CLAIMS

5. In 2011, plaintiff opened a retail food establishment (hereafter, the "store") in Poughkeepsie which plaintiff continues to own and operate.

6. Local Law No. 9 of 1991 of the County of Dutchess, as amended by Local Law No. 3 of 1998, as amended by Local Law No. 2 of 2011, requires the item pricing of goods offered for sale at retail in Dutchess County (hereinafter referred to as the "Local Law"). It provides:

### SECTION 1. LEGISLATIVE INTENT

This Legislature hereby finds and determines that the Consumers in Dutchess County are entitled to clear information, setting forth the prices of consumer commodities which they purchase from retail supermarkets. A clear, easily-enforceable item-pricing statute will promote the Dutchess County consumers' right to all reasonable information in order that these consumers are able to make informed choices about their purchases.

The Legislature also finds and declares that there is technology utilizing a laser scanning device offering numerous efficiencies and economies to the operation of the retail food industry. The Legislature further finds that price marking constitutes an indispensible ingredient to a consumer's right to all reasonable information in order to make an informed purchase choice.



*The purpose of this Legislation is to require item pricing to protect the interest of the Consumer public, and to promote useful technology by permitting continued testing and development of the UNIVERSAL PRODUCT CODE CHECK-OUT SYSTEM without the removal of ITEM PRICE.*

## SECTION 2. DEFINITIONS

(1) **"Retail Food Establishment"** shall mean a store within a general retail merchandise store selling primarily food at retail for off-premises consumption, provided that such store had annual gross sales in the previous calendar year of at least two million dollars, unless such store is a part of network of subsidiaries, affiliates or other member stores, under direct or indirect common control, which, as a group had annual gross sales in the previous calendar year of at least two million dollars.

(2) **"Consumer Commodity"** shall mean the following:

(a)food, including all material solid, liquid or mixed, whether simple or compounded, used or intended for consumption by human beings, or animals normally kept as household pets, and all substances or ingredients added thereto for any purposes, and, (b) napkins, facial tissues, toilet tissues, foil wrapping, plastic wrapping, paper toweling, disposable plates and cups, and, (c) detergents, soaps and other cleansing agents, and (d) non-prescription drugs, female hygiene products and toiletries.

(3) **"Computer Assisted Check-Out System"** shall mean any electronic device, computer system or a machine which determines the selling price of a consumer commodity by interpreting its universal product code, or an in-house product code, or by use of its prices look-up function.

(4) **"Inspector"** shall mean an employee of the Dutchess County Division of Weights and Measures, Department of Health.

## SECTION 3. ITEM PRICING REQUIRED

(a) Every retail food establishment in Dutchess County which sells, offers for sale or exposes for sale a consumer commodity shall clearly disclose on each item, the selling price of said consumer commodity. The selling price may be shown by stamp, tag, label, or otherwise, market in Arabic numeral on each item.

(b) The provisions of Section 3(a) hereof shall not apply to the following consumer commodities however packaged or contained, provided the selling price is conspicuously, plainly and clearly state din Arabic numerals by a sign contiguous to the point of display of the commodity:

    (1) Milk

    (2) Eggs

    (3) Loose fresh produce

A22

(4) Consumer commodities which are offered for sale in single packages and weighing three ounces or less and are priced under one dollar.

(5) Snack good such as cakes, gum candies, chips and nuts offered for sale in single packages and weighing five ounces or less.

(6) Food sold for consumption on premises.

(7) Identical items within a multi-item package that is properly price marked.

(8) Products sold through a vending machine.

(9) Cigarettes, cigars, tobacco and tobacco products.

(10) Food offered for sale in bulk.

(c) Every retail food establishment in Dutchess County which accepts manufacturers' coupons is required to post clearly and concisely the establishment's policy with respect to the doubling and/or tripling of coupons in areas easily visible to customers at all entrances to the establishment.

## SECTION 4. ACCURACY OF COMPUTER ASSISTED CHECK-OUT SYSTEMS

(a)  In a retail food establishment with a computer assisted check-out system, the programmed computer prices for any consumer commodity shall not exceed the item price and/or advertised price, whichever is lower.

(b)  In a retail food establishment with a computer assisted check-out system, the inspector shall be permitted to compare the advertised price and/or item price consumer commodity sold in the retail establishment, with the programmed computer price.  The retail food establishment shall provide such access to the computer as is necessary for the inspector to make the determination.

### (a) (1)  INSPECTION PROCEDURES

For any inspection under this section, the establishment representative shall afford the inspection access to the test mode of the Computer Assisted Check-out System in use at the establishment or to a comparable function of said system and to the retail price information contained in a price look-up function.

### (2)  STOP REMOVAL ORDER

Inspection shall have the authority to issue a "STOP REMOVAL ORDER" with respect to any Consumer Commodity being used, handled, or offered for sale in Violation of this Local Law.  Any such order shall be in writing and direct that the Consumer Commodity be removed from sale pending correction.

## SECTION 5. PENALTIES, INJUNCTIVE RELIEF, SETTLEMENTS

(a)  A violation of any provision of this Local Law or of any rule or regulation promulgated hereunder shall be punishable by the payment of a Civil Penalty in the sum of not more than one hundred dollars for each such violation, with a maximum fine of SEVEN THOUSAND FIVE HUNDRED dollars per inspection.

A23

(b) Whenever any person has engaged in any acts or practices which constitutes repeated or persisted violations of any provision of this LOCAL LAW or any rule or regulation promulgated hereunder, the County Attorney, upon the request of the Department of Health, Division of Weights and Measures, may commence an action in the name of the County for a restraining order, temporary or permanent injunction or equitable relief.

(c) On finding a Violation of the provisions of this LOCAL LAW or the rules and regulations promulgated hereunder, the Dutchess County Department of Health, Division of Weights and Measures, shall expeditiously cause the same to be corrected to where there is evidence of intent to defraud refer evidence of such violation to the DISTRICT ATTORNEY of the County for prosecution or in the absence of intent to defraud refer to the Attorney for the municipality for commencement of a Civil action, in the name of the municipality, to recover a Civil Penalty in the amounts prescribed. A cause of action for recovery of such penalty may be released, settled or compromised by the municipality attorney, or, thereafter, by such Attorney.

## SECTION 6. DEPARTMENT OF HEALTH, DIVISION OF WEIGHTS AND MEASURES

The responsibility of the administration and enforcement of this Law shall be with the Dutchess County Department of Health, Division of Weights and Measures. He shall be vested with the power to promulgate rules and regulations consistent with the Law.

## SECTION 7. SEPARABILITY

If any part of or provision of this Law or the Application thereof to any person, entity of circumstances by adjudged invalid by a Court of competent jurisdiction, such judgment shall be confirmed in its operation to the part of or such provision of or application directly involved in the controversy in which such judgment shall have been rendered and shall not affect or impair the validity of the remainder of this law or the application thereof to other persons, entities or circumstances.

## SECTION 8. JURISDICTION

This Local Law shall be effective throughout the COUNTY OF DUTCHESS.

(Emphasis in original.)



7. Since its opening, plaintiff's Poughkeepsie store has had gross annual sales in excess of two million dollars and is thus subject to the price marking requirements set forth in the Local Law.

8. In 2011, when plaintiff opened its Poughkeepsie store, the store was inspected by the County to determine if it was in compliance with the Local Law. Upon such inspection it was determined that plaintiff was not in compliance with §3 of the Local Law and the County issued an order directing plaintiff to "correct immediately."

9. On June 14, 2012, the County conducted another inspection of plaintiff's Poughkeepsie store, found that the store was less than 50% in compliance with §3 of the Local Law and issued plaintiff a $5,000.00 fine which plaintiff paid.

10. On August 20, 2013, the County conducted an inspection of plaintiff's Poughkeepsie store and found it not to be in compliance with §3 of the Local Law and issued plaintiff a $7,500.00 fine which plaintiff paid.

11. On December 2, 2013 the County conducted another inspection of plaintiff's Poughkeepsie store, found it not to be in compliance with the Local Law and thereafter again issued plaintiff a $7,500.00 fine which plaintiff paid.

12. The item price marking required under §3 of the Local Law constitutes compelled commercial speech which is protected under the First Amendment.

13. The item price marking requirements of §3 of the Local Law mandate that plaintiff engage in commercial speech protected by the First Amendment.

14. The County's asserted or purported interests in enforcing the item price marking requirements of §3 of the Local Law are not real or substantial interests.

A25

15. Over the years since 1991 when the Local Law was first enacted, Computer Assisted Checkout Systems (CACOS) have developed into an accurate and industry-accepted means of pricing consumer commodities and have become an indispensable technology for food establishment retailers.

16. CACOS have obviated the price marking requirements of §3 of the Local Law so that there is no longer any real or substantial interest to be achieved by the County through the enforcement of its price marking requirements; by virtue of the availability and industry-accepted accuracy of CACOS, the item price marking requirements of §3 of the Local Law do not rationally serve any legitimate governmental purpose, including the objectives and interests set forth in the "Legislative Intent" of §1 the Local Law.

17. By virtue of the availability and industry-accepted accuracy of CACOS, the item price marking requirements of §3 of the Local Law are unduly burdensome in that they require plaintiff to expend and waste substantial amounts of resources and labor.

18. By virtue of the availability and industry-accepted accuracy of CACOS, the item price marking requirements of §3 of the Local Law unreasonably and unnecessarily restrain, burden and interfere with plaintiff's ability to place items on promotional sales (where prices on certain items are reduced for limited periods) and to otherwise change the prices of items when plaintiff deems such changes to be appropriate, necessary or desirable. If plaintiff wants to hold a one-day sale on canned corn, for example, plaintiff is forced to remove the regular price stickers from each can on the shelves, replace them with the sale price stickers and then, the next day, remove the sale price stickers and replace them with the regular price stickers. Plaintiff estimates that the cost of its


A26

compliance with the item price marking requirements of §3 of the Local Law is approximately $45,000.00 per year.

19. By virtue of the availability and industry-accepted accuracy of CACOS, coupled with state-mandated shelf tags showing an item's unit price, retail price and bar code, the pricing information being made available to consumers is clear, complete and unambiguous and thus one of the County's presently stated interests – providing consumers with unambiguous pricing information – is neither furthered nor enhanced by the item price marking requirements of §3 of the Local Law.

20. By virtue of the availability and industry-accepted accuracy of CACOS, along with the aforementioned state-mandated shelf tags and plaintiff's and the other Dutchess grocers' present abilities to make scanners available to consumers throughout their stores and the County's ability to conduct accuracy inspections, there is nothing that item pricing appreciably adds to the County's other presently stated interest in preventing deception.

21. To the extent that the harms that form the bases of the County's interests in consumer protection (as set forth in the "Legislative Intent" of §1 the Local Law or as presently stated) are real harms, the commercial speech forced by §3 of the Local Law does not alleviate them to any reasonable or discernible degree.

22. By virtue of the availability and industry-accepted accuracy of CACOS, the item price marking requirements of §3 of the Local Law do not directly advance the County's interest in consumer protection as set forth in the "Legislative Intent" of §1 of the Local Law and as presently stated by the County.



23. By virtue of the availability and industry-accepted accuracy of CACOS, the item price marking requirements of §3 of the Local Law provides only ineffective or remote support for the County's interest in consumer protection as set forth in the "Legislative Intent" of §1 of the Local Law and as presently stated by the County.

24. By virtue of the availability and industry-accepted accuracy of CACOS, the County's interest in consumer protection as set forth in the "Legislative Intent" of §1 of the Local Law and as presently stated can be served by a more limited means than the commercial speech forced by §3 of the Local Law.

25. The item price marking requirements of §3 of the Local Law not only fail to provide any real or meaningful benefit to consumers, they actually work to the consumers' determinant in that they (1) substantially increase the prices that must be charged to consumers in order to cover the costs incurred in complying with the requirements and (2) prevent or restrain promotional sales and thereby substantially prevent item price reductions.

26. Upon information and belief, the County's asserted or purported interests in enforcing the item price marking requirements of §3 of the Local Law are pretextual in that the County's real reasons, motivations or interests in enforcing the Local Law are not the consumer-oriented interests set forth in the "Legislative Intent" of §1 of the Local law or as presently stated by the County but are instead (1) the raising of revenue for the County through the imposition of fines for noncompliance with the Local Law's price marking requirements and/or (2) the creation of jobs by coercing retail food establishments to hire additional employees to attempt to comply with the Local Law's

A28

price marking requirements; neither of which constitutes a legitimate governmental function or objective.

27. The County's enforcement of the Local Law through the imposition of fines constitutes an ongoing policy of punishing plaintiff and other similarly situated retail food establishments for the exercise of their First Amendment right to freely invite the public to enter into commercial transactions on terms of their own choosing.

28. The County's enforcement of the Local Law constitutes an ongoing policy and practice of punishing plaintiff and other stores similarly situated for the exercise of their First Amendment rights not to be coerced into engaging in commercial speech.

29. The County's enforcement of the Local Law has had, and continues to have, an objective chilling effect upon plaintiff's exercise of its First Amendment rights to free speech in that a reasonable food marketing entity in plaintiff's position would perceive the County's conduct as a threat of further punishment if it fails to comply with the price marking requirements of §3 of the Local Law.

30. By virtue of the chilling effect which the Local Law and its enforcement have had, and continue to have, upon plaintiff's First Amendment right to freedom of speech, as well as the First Amendment rights of others similarly situated, plaintiff and those similarly situated have been and continue to be irreparably injured and will suffer further irreparable injury if the Local Law and its enforcement are not declared to be unconstitutional.

31. By virtue of the forgoing, that aspect of the price marking requirements of §3 of the Local Law which compels First Amendment protected commercial speech cannot

A29

satisfy the rational basis standard enunciated in *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626 (1985) and its progeny.

32. By virtue of the forgoing, that aspect of the price marking requirements of §3 of the Local Law which places restraints and burdens upon and restricts commercial speech cannot satisfy the intermediate scrutiny standard enunciated in *Central Hudson v. Public Service Commission of New York,* 447 U.S. 557 (1980) and its progeny.

**Relief**

33. As a result of the foregoing, this Court should issue an Order declaring that the Local Law is unconstitutional in that it violates plaintiff's First Amendment right to freedom of commercial speech in two separate and distinct ways: first by compelling commercial speech without a rational basis and second by restricting commercial speech without directly serving any substantial interest and/or by means that are more extensive than necessary.

34. As a result of the violations of plaintiff's rights under the First and Fourteenth Amendments as set forth above, plaintiff is entitled to an award of compensatory damages including the costs incurred by plaintiff in complying with the price marking requirements of §3 of the Local Law and the refunding of the fines that plaintiff has paid pursuant to the County's enforcement of the Local Law.

35. As a result of the foregoing, this Court should issue an Order permanently enjoining the County from enforcing the Local Law.

A30

## THE PROPOSED CLASSES AND THE STATEMENT OF
## CLASS ACTION CLAIMS AGAINST DEFENDANTS

36. Plaintiff repeats each and every allegation set forth in ¶¶1-35.

37. Plaintiff seeks certification under Fed. R. Civ. Proc. Rules 23(a), 23(b)(2) and 23(b)(3) of a class consisting of all persons or entities owning and/or operating within the past three years Retail Food Establishments that have been and/or are subject to the provisions of the Local Law.

38. The proposed class seeks declaratory and injunctive relief and monetary damages and interest.

39. The exact number of members of the proposed class is presently not available to plaintiff. However, individual joinder is impracticable in that, upon information and belief, the County presently inspects at least 31 Retail Food Distributors for compliance with the item price marking requirements under §3 of the Local Law.

40. As this case is predicated solely upon constitutional challenges to a local law, common questions of law exist as to all of the members of the proposed classes and predominate over any questions that might affect only individual members; to wit, whether the Local Law violates the plaintiff's and proposed class members' rights to freedom of commercial speech under the First Amendment either by compelling commercial speech without a rational basis or by restricting commercial speech without directly serving any substantial interest and/or by means that are more extensive than necessary.

A31

41. The named plaintiff's claims are typical of the claims of the members of the proposed class as they are grounded solely upon the aforementioned constitutional challenges to the Local Law.

42. Plaintiff is represented by the law firms of Bloom & Bloom, P.C. of New Windsor, New York, and Robert N. Isseks, Esq., of Middletown, New York. These law firms have the resources, expertise and experience to prosecute this class action and their attorneys do not have knowledge of any conflicts either among the members of the class or among the law firms and the members of the class.

43. A class action is superior to other available methods for the fair and efficient adjudication of the controversy raised in this lawsuit because: (1) the prosecution of separate actions would be inefficient and wasteful of judicial resources; (2) the issues raised can be more fairly and efficiently resolved in the context of a single action rather than piece-meal litigation in the context of separate actions; (3) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (4) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against the defendant which would establish incompatible standards of conduct; (5) defendant has acted on grounds applicable to all class members, making final declaratory relief on behalf of all members necessary and appropriate; and (6) questions of law and/or fact common to members of the class on issues of liability predominate over any questions, such as that of individual damages, that might affect individual class members.

A32

44. This class action is also appropriate for certification because the County's enforcement of the challenged Local Law is generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. The challenged Local Law applies to and affects all of the members of the class uniformly.

WHEREFORE, plaintiffs ask this Court to:

A. Certifying this action as a class action and naming plaintiff as class representative and plaintiff's counsel as class counsel;

B. Issue an order adjudging and declaring that Local Law No. 9 of 1991 of the County of Dutchess, as amended by Local Law No. 3 of 1998 as amended by Local Law No. 2 of 2011 violates plaintiff's and the proposed class members' rights to freedom of speech guaranteed by the First Amendment to the United States Constitution;

C. Issue an order permanently enjoining the defendant from enforcing Local Law No. 9 of 1991 of the County of Dutchess, as amended by Local Law No. 3 of 1998 as amended by Local Law No. 2 of 2011;

D. Award plaintiff and the proposed class compensatory damages against the defendant including the refund of all fines that plaintiff and the proposed class members have paid pursuant to Local Law No. 9 of 1991 of the County of Dutchess, as amended by Local Law No. 3 of 1998 as amended by Local Law No. 2 of 2011, for a time period to be determined by Court;

E. Award plaintiff the costs and disbursements of this action;

F. Award plaintiff reasonable attorney fees; and

A33

G.  Grant plaintiff such further and other relief as to this Court may seem just and

proper.

Dated: December 1, 2014

ROBERT N. ISSEKS, ESQ. (RI 2041)
6 North Street
Middletown, NY  10940
845-344-4322

KEVIN D. BLOOM, ESQ.  (KB 5347)
Bloom & Bloom, P.C.
530 Blooming Grove Turnpike
P.O. Box 4323
New Windsor, New York 12553
(845) 561-6920

Attorneys for Plaintiff

A34